ESTATE OF ALBERT F. METZGER, DECEASED, JOHN A. METZGER AND Z. TOWNSEND PARKS, JR., PERSONAL REPRESENTATIVES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4952–91.          Filed March 23, 1993.

*Luther B. Ditch,* for petitioner.
*Clare J. Brooks,* for respondent.

HAMBLEN, *Chief Judge:* Respondent determined a deficiency of $11,701 in the Federal estate tax of the Estate of Albert F. Metzger (petitioner).[1] This case is presently before the Court on cross-motions for partial summary judgment pursuant to Rule 121.

After concessions, the sole remaining issue for decision is whether Albert F. Metzger made taxable gifts of $20,000 during his lifetime. Central to this issue is the question of whether noncharitable gifts made by check and drawn by an

---

[1] Section references are to the Internal Revenue Code in effect on the date of decedent's death. Rule references are to the Tax Court Rules of Practice and Procedure.

attorney in fact on behalf of the donor are complete as of the date the checks are deposited by the donees. We must first decide whether the donor relinquished dominion and control of the funds represented by the checks upon delivery of the checks to the donees. If we resolve this first question in the negative, we must decide whether the transfers should nonetheless be treated as completed gifts upon the delivery and deposit of the checks under the so-called relation-back doctrine.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Albert F. Metzger (Albert or decedent) died on May 29, 1987. At the time of his death, Albert was domiciled in the State of Maryland. On June 8, 1987, the register of wills for Baltimore County, Maryland, appointed John A. Metzger and Z. Townsend Parks, Jr., personal representatives of the Estate of Albert F. Metzger. John A. Metzger (John), decedent's son, resided in Freeland, Maryland, at the time of filing the petition for redetermination.

Albert intended to make gifts to his heirs and their spouses. On August 16, 1985, Albert executed a power of attorney appointing John his attorney in fact. Paragraph 8 of the power of attorney grants John the authority:

To convey, transfer, assign, give, or otherwise dispose of, prior to my death, any property, real or personal, tangible or intangible, for no consideration to my heirs, legatees, and their spouses.

In addition, paragraph 9 of the power of attorney states that John has the authority:

Generally, to say, act, transact, determine, accomplish and finish all matters and things whatsoever relating to my affairs as fully, amply and effectually, to all intents and purposes, as I, if present, ought or might personally do, although the matter should require more special authority than is hereby conferred; and I hereby ratify and confirm all and whatsoever the said agent or attorney or his substitute shall lawfully do or cause to be done in and about the premises, by virtue of these presents.

On December 14, 1985, John drew four checks against Albert's personal checking account at Equitable Bank, N.A.

The checks were made payable to the individual donees and in the amounts as follows:

| Donee | Amount |
|---|---|
| William F. Metzger | $10,000 |
| Suzanne S. Metzger | 10,000 |
| John A. Metzger | 10,000 |
| Shirley A. Metzger | 10,000 |

Shirley A. Metzger (Shirley) is John's wife.[2] The check payable to Shirley was delivered to her on or before December 31, 1985, the date John and Shirley deposited their checks into a joint savings account at Commonwealth National Bank in New Freedom, Pennsylvania. These checks did not clear Equitable Bank, N.A. (drawee bank), until January 2, 1986. There were, at all times pertinent hereto, sufficient funds on deposit in Albert's account to pay the checks issued to John and Shirley.

In 1986, John drew another set of checks payable to the same four donees in the same amounts. All of these checks were cashed in 1986.

On February 24, 1988, John filed a Federal estate tax return (Form 706) on behalf of decedent's estate. In completing the estate tax return, John reported that decedent did not make any taxable gifts during his lifetime.

As indicated, respondent determined a deficiency in Federal estate tax against decedent's estate. In particular, the explanation of adjustments attached to the deficiency notice states in pertinent part:

It has been determined that two taxable gifts of $10,000 cash were made prior to the decedent's death. No taxable gifts were reported on the estate tax return. Accordingly the Adjusted Taxable Gifts are increased $20,000.

### OPINION

Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); *Zaentz v. Commissioner*, 90 T.C. 753, 754 (1988);

---

[2] The amounts transferred to William F. Metzger and Suzanne S. Metzger are not at issue in this case.

*Naftel v. Commissioner,* 85 T.C. 527, 529 (1985). In light of the parties' stipulation as to the material facts in this case, we conclude that the legal issue presented is ripe for summary adjudication.

Section 2001 imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. *United States Trust Co. v. Helvering,* 307 U.S. 57, 60 (1939). The taxable estate is defined in section 2051 as the gross estate less deductions. Pursuant to sections 2031 and 2033, the value of the gross estate generally includes the value of all property to the extent of the interest therein of decedent at the time of his death. *Estate of Jalkut v. Commissioner,* 96 T.C. 675, 678 (1991). Further, under a network of statutory rules, the gross estate includes various transfers effected during the lifetime of decedent. Secs. 2035 through 2038, 2042.

Section 2035(b)(2) provides in pertinent part that the gross estate shall not include any gift to a donee made during a calendar year if the donor was not required by section 6019 to file any gift tax return for such year with respect to such gift. Section 6019(a)(1) provides that a gift tax return need not be filed if the transfer qualifies for exclusion under section 2503(b) or (e). For transfers made after December 31, 1981, section 2503(b) provides that the first $10,000 of gifts made to any person during a year is excluded in computing the total amount of gifts made during that year. *Estate of Cristofani v. Commissioner,* 97 T.C. 74, 78 (1991). These excluded amounts are so-called annual exclusion gifts. 5 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 124.1 (2d ed. 1993).

Respondent concedes that John possessed the authority to make the transfers on Albert's behalf and that the transfers were valid and effective under relevant State law. Cf. *Estate of Casey v. Commissioner,* 948 F.2d 895 (4th Cir. 1991), revg. T.C. Memo. 1989-511. Consequently, we are left to decide whether the gifts were completed in 1985 (as petitioner contends) or in 1986 (as argued by respondent). Assuming the gifts were consummated upon the delivery and deposit of the checks in December 1985, the transfers qualify for the annual exclusion of $10,000 per donee under section 2503(b). However, if the gifts were not consummated until the checks were paid in 1986, those gifts, when combined with the addi-

tional gifts made later in 1986, would exceed the annual exclusion amount and result in aggregate taxable gifts of $20,000 for 1986.

## 1. *Dominion and Control*

The regulations provide guidance as to when a gift is complete for purposes of the Federal gift tax. Section 25.2511-2(b), Gift Tax Regs., provides in relevant part as follows:

> As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined. * * *

In sum, the regulation provides in pertinent part that a gift generally is complete when the donor has so parted with dominion and control as to leave him with no power to change its disposition.

Petitioner relies on language contained in the power of attorney to support its position that the gifts were perfected in December 1985, when the checks were delivered to John and Shirley and deposited to their account. In particular, petitioner directs the Court's attention to: (1) Paragraph 8 of the power of attorney, which grants John the express authority to make gifts on the principal's behalf; and (2) paragraph 9 of the power of attorney, which states that the principal expressly ratifies all lawful acts of the attorney in fact. Reading these two provisions together, petitioner contends that Albert could not have revoked the gifts because he could not legally stop payment on the checks.

Respondent, citing *Malloy v. Smith,* 265 Md. 460, 290 A.2d 486 (1972), counters that under Maryland law a gift by check is complete only after the check is presented for payment *and* accepted by the drawee bank. Respondent argues that a gift should not be considered complete until accepted by the drawee bank because prior to that time the gift could be revoked by virtue of insufficient funds in the particular account, through the donor's stop payment order, or as a con-

sequence of the donor's death. While respondent does not question John's authority to make gifts on Albert's behalf, respondent rejects the notion that the ratification language of paragraph 9 of the power of attorney precluded Albert from revoking the gifts in question.

The question of whether the donor (Albert) so parted with dominion and control of the amounts transferred as to leave him with no power to change its disposition is governed by State law. *Estate of Dillingham v. Commissioner,* 88 T.C. 1569, 1575 (1987), affd. 903 F.2d 760 (10th Cir. 1990). The parties agree that the law of the State of Maryland is controlling.

Md. Com. Law I Code Ann. section 3-409(1) (1992) provides:

(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

The Court of Appeals of Maryland interpreted this provision in *Malloy v. Smith, supra* at 487-488, stating:

The point is, of course, that when the donor uses his own check [as opposed to a cashier's or manager's check] to make the gift, there is no assignment of funds because he does not relinquish control of the sum which the check represents. A consequence of this is that a valid delivery alone will not complete the gift. To perfect the gift the check must be presented by the donee and accepted by the drawee, because the donor could stop payment, withdraw from his account the very funds which the check represents, or die before payment is made, any of which would revoke the gift.

To the same effect, see *Ward v. Federal Kemper Ins. Co.,* 62 Md. App. 351, 489 A.2d 91 (1985). In sum, Maryland law provides that the delivery of a personal check ordinarily is regarded as conditional payment. If a check is intended as a gift and is delivered to the donee, the gift remains incomplete until the donee presents the check for payment and the check is accepted by the drawee.

With the foregoing as background, we are compelled to reject petitioner's argument that the gifts in question were complete upon the delivery of the checks to John and Shirley. As indicated, Maryland law provides that a gift by check is not complete until accepted by the drawee bank. In this case,

the drawee bank did not accept the checks for payment until January 2, 1986.

Nor can we agree with petitioner that John's status as attorney in fact accelerates the date that the gifts are considered complete under Maryland law. In particular, we disagree with petitioner's interpretation of the ratification language contained in paragraph 9 of the power of attorney. In our view, the ratification language is intended to sanction all lawful acts of the attorney in fact that are not otherwise expressly authorized under the power of attorney. In this regard, Black's Law Dictionary 1261-1262 (6th ed. 1990) defines the term "ratification" in pertinent part as follows:

> In a broad sense, the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act. * * *
>
> \* \* \* \* \* \* \*
>
> In the law of principal and agent, the adoption and confirmation by one person with knowledge of all material facts, of an act or contract performed or entered into in his behalf by another who at the time assumed without authority to act as his agent. * * *

Because John was expressly authorized under the power of attorney to make gifts on Albert's behalf, ratification of those acts would serve no meaningful purpose.

In any event, even if we assume that the ratification language applies to the gifts, we cannot agree that this accelerates the date that the gifts are considered to be complete. Petitioner ignores the fact that the transfers would never have ripened into completed gifts if Albert had died prior to the time the checks were accepted by the drawee bank. *Malloy v. Smith, supra.* Moreover, it cannot be said that the ratification of all lawful acts of an attorney in fact alters the essential characteristics of those actions. For example, assuming the attorney in fact established and funded a revocable trust on behalf of the principal, it does not follow that the principal's ratification of that act converts the trust into an irrevocable one. Thus, we conclude that Albert retained dominion and control over the checks drawn by John as attorney in fact until the checks were accepted by the drawee bank on January 2, 1986.

## 2. *Relation-Back Doctrine*

Despite our holding that Albert retained control over the checks, petitioner may still prevail if we agree that the payment of the checks in 1986 relates back to the delivery and deposit of the checks in 1985. Petitioner relies on *Bacchus v. United States,* 57 AFTR 2d 86-1519, 86-1 USTC par. 13,669 (D.N.J. 1985), to support its position.

Respondent maintains that the relation-back doctrine should not apply under the circumstances presented. In particular, respondent relies on *Estate of Gagliardi v. Commissioner,* 89 T.C. 1207 (1987), and *McCarthy v. United States,* 806 F.2d 129 (7th Cir. 1986), for the proposition that the relation-back doctrine generally is not applied where noncharitable gifts are involved.

Petitioner counters that we should either distinguish or overrule *Estate of Gagliardi.*

A brief survey of the cases involving the relation-back doctrine will allow a better understanding of the policies and concerns at issue in the instant case. We begin with *Estate of Spiegel v. Commissioner,* 12 T.C. 524 (1949) (Court reviewed), a case in which respondent disallowed income tax deductions claimed by the taxpayer for the taxable year 1942 for two charitable contributions made by checks dated December 30, 1942. Although the checks were delivered in 1942, they were not deposited by the donees until the following year.

We found that the checks had been delivered and accepted unconditionally, were thereafter promptly presented for payment, and were duly paid upon presentation. Based on these findings, we concluded that the timely payment of the checks related back to the date of delivery and that respondent erred in disallowing the charitable deductions reported by the taxpayer. *Id.* at 533.

We subsequently applied *Estate of Spiegel* in a slightly different context in *Estate of Belcher v. Commissioner,* 83 T.C. 227 (1984) (Court reviewed). In the latter case, respondent determined a deficiency in Federal estate tax after concluding that checks mailed to charitable donees prior to the donor's death but not paid until after death should be included in the gross estate under section 2031. Again, we held that, upon prompt presentation and payment of the

checks by the drawee bank, the conditional payment which occurred when the checks were delivered became absolute and related back to the date of delivery, thereby eliminating those amounts from the donor's gross estate. *Id.* at 235.[3]

Since deciding *Estate of Belcher,* we have had the opportunity to analyze the relation-back doctrine in two cases involving noncharitable donees: *Estate of Dillingham v. Commissioner,* 88 T.C. 1569 (1987), and *Estate of Gagliardi v. Commissioner, supra.*

The factual setting in *Estate of Dillingham v. Commissioner, supra,* is similar to that presented in the instant case.[4] On December 24, 1980, the donor delivered six checks, each in the amount of $3,000, to six individual (noncharitable) donees. On January 28, 1981, the donees presented the checks to the drawee bank for payment and the checks were paid. On that same date, the donor delivered six additional checks to the donees. These checks were likewise presented to the drawee bank for payment and paid.

Based on the meager record presented, we declined to apply the relation-back doctrine in *Estate of Dillingham v. Commissioner, supra.* In reaching this conclusion, we stated:

Because the checks in the present case were cashed before the decedent's death, the concern of this Court in *Belcher* and the Circuit Court in *McCarthy* that the donees might have a secret agreement with the donor that the checks would not be cashed until after the donor's death is not present. To that extent these cases are distinguishable from *McCarthy* and *Belcher.*

However, a similar concern is present in these cases since the checks were not cashed until 35 days after the delivery of the checks to the donees. There is no evidence explaining the reason for the delay. The delay, connected with the failure of the donees to cash the checks until the additional checks were delivered to the donees on January 28, 1981, casts doubt as to whether the checks were *unconditionally* delivered. Furthermore, we do not know whether the decedent's checking account had sufficient funds to cover the checks at the time the checks were delivered. We do not even know whether the decedent intended to make a gift by delivering the checks, an essential element in proving a gift * * *

[*Estate of Dillingham v. Commissioner, supra* at 1574; fn. ref. omitted.]

---

[3] In *Estate of Belcher v. Commissioner,* 83 T.C. 227, 239 (1984) (Court reviewed), we expressly reserved for another day the question of the proper treatment of noncharitable gifts under similar circumstances.

[4] Remarkably, neither party cites *Estate of Dillingham v. Commissioner,* 88 T.C. 1569 (1987), affd. 903 F.2d 760 (10th Cir. 1990).

In light of the taxpayer's failure to prove the unconditional delivery of the checks in the first instance, we declined to decide what circumstances, if any, would allow for the application of the relation-back doctrine to noncharitable gifts.

Our most recent discussion of the relation-back doctrine is found in *Estate of Gagliardi v. Commissioner, supra.* In this case, the donor desired to make gifts to each of his children and executed a special power of attorney appointing his son as attorney in fact. On February 4, 1982, the son wrote four checks, each in the amount of $3,750, to himself and his brother and sisters. Only one of the checks was cashed prior to the donor's death on February 22, 1982.

We first concluded that the transfers were valid and effective under the power of attorney and that the funds represented by the check cashed prior to the donor's death were properly excluded from the donor's gross estate. *Estate of Gagliardi v. Commissioner, supra* at 1211. We then turned to the question of whether the relation-back doctrine should apply to the checks that were not cashed until after the donor's death. Assuming the date of payment of the checks related back to the date the checks were issued (prior to the donor's death), the amount of the checks would be excluded from the donor's Federal gross estate.

We declined to extend the relation-back doctrine to the checks cashed after the donor's death. We stated that the reasoning underlying our decision in *Estate of Belcher v. Commissioner, supra,* does not extend to cases involving noncharitable gifts:

Our decision in *Estate of Belcher* was based on the special characteristics of charitable contributions, including the possibility that the estate would receive an offsetting deduction under section 2055 if the funds represented by the checks were included in the gross estate (83 T.C. at 236-238) and, more importantly, our prior decision in *Estate of Spiegel v. Commissioner,* 12 T.C. 524 (1949), involving the deductibility of charitable contributions for income tax purposes. In *Estate of Spiegel* we held that charitable contributions made by check were deductible in the year the check was issued rather than the year paid. Not following this case in Estate of Belcher would have led to the result that payments that had been deducted for income tax purposes were still includable in the gross estate.

These bases of decision are not present in the noncharitable gift situation—gifts are not deductible for income tax purposes and, if made after

death, do not reduce the gross estate for estate tax purposes. * * *
[*Estate of Gagliardi v. Commissioner*, 89 T.C. 1207, 1212 (1987).]

Thus, in *Estate of Gagliardi*, we held that the relation-back doctrine does not apply where a check made payable to a noncharitable donee is not cashed prior to the donor's death. See *McCarthy v. United States*, 806 F.2d 129 (7th Cir. 1986).

Subsequent to our decision in *Estate of Gagliardi*, the Tenth Circuit affirmed our decision in *Estate of Dillingham v. Commissioner, supra.* See *Estate of Dillingham v. Commissioner*, 903 F.2d 760 (10th Cir. 1990). Consistent with our analysis, the Tenth Circuit declined to apply the relation-back doctrine under the circumstances presented in that case. The appellate court expressed concern that there may have been "a mutual understanding between donor and donee that gifted checks not be cashed until some future date *after* the end of the year." *Id.* at 764-765. Of note, the Tenth Circuit reserved for another day the question of the application of the relation-back doctrine where gifts by check drawn in late December are cashed immediately after the New Year holiday. *Id.* at 765 n.7.

Based upon our survey of the cases, we agree with petitioner that the instant case is factually distinguishable from *Estate of Gagliardi v. Commissioner, supra.* We do not construe the latter decision as foreclosing the relation-back doctrine where, as here, a check issued to a noncharitable donee is deposited on December 31 and clears the drawee bank immediately after the New Year holiday. Cf. *Estate of Dillingham v. Commissioner*, 903 F.2d at 765 n.7.

At the same time, there are distinct differences between the record presented in *Estate of Dillingham v. Commissioner, supra,* and that of the instant case. First, we have found that Albert intended to make gifts to his heirs and their spouses as indicated by the express language of the power of attorney. Respondent does not contest decedent's donative intent. Further, the parties agree that there were at all times sufficient funds in Albert's account to pay the checks as written. Finally, and equally important, the checks in question were presented for payment on December 31, 1985—the final day of the year for which favorable tax treatment is sought and 17 days after the date the checks were issued. Because the checks were presented for payment

within 30 days of issuance, a presumption arises under Maryland law that the checks were presented within a reasonable time.[5] Respondent has presented no evidence to rebut this presumption.

We see no reason for refusing to apply the relation-back doctrine to noncharitable gifts where the taxpayer is able to establish: (1) The donor's intent to make a gift, (2) unconditional delivery of the check, and (3) presentment of the check within the year for which favorable tax treatment is sought and within a reasonable time of issuance. Assuming these elements are present, the practical realities of everyday commerce recognized in *Estate of Spiegel v. Commissioner,* 12 T.C. 524, 529 (1949), require a limited extension of the relation-back rule.

Giving due consideration to all of the facts and circumstances, we conclude that the checks in question were in fact *unconditionally* delivered to John and Shirley in December 1985. There simply is no evidence in the record to the contrary. Because John and Shirley presented the checks for payment on December 31, 1985, and the checks were promptly paid, we hold that the acceptance of the checks by the drawee bank in January 1986 relates back to the time the checks were deposited in December 1985. It follows that the gifts by check qualify as valid annual exclusion gifts under section 2503(b) for 1985 and were not required to be reported on petitioner's Federal estate tax return.

---

[5] Md. Com. Law I Code Ann. sec. 3-503 (1992) provides in pertinent part:

(1) Unless a different time is expressed in the instrument the time for any presentment is determined as follows:

     \*     \*     \*     \*     \*     \*     \*

(b) Where an instrument is payable after sight it must either be presented for acceptance or negotiated within a reasonable time after date or issue whichever is later.

     \*     \*     \*     \*     \*     \*     \*

(2) A reasonable time for presentment is determined by the nature of the instrument, any usage of banking or trade and the facts of the particular case. In the case of an uncertified check which is drawn and payable within the United States and which is not a draft drawn by a bank the following are presumed to be reasonable periods within which to present for payment or to initiate bank collection:

(a) With respect to the liability of the drawer, thirty days after date or issue whichever is later \* \* \*.

The term "presumed" is defined in Md. Com. Law I Code Ann. sec. 1-201(31) (1992) as follows:

"Presumption" or "presumed" means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

To reflect the foregoing,

*An appropriate order will be issued.*