ESTATE OF LARCH M. CUMMINS, DECEASED, ELSIE COOLEY AND WANDA HICKSON, CO-PERSONAL REPRESENTATIVES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cummins v. Commissioner
Docket No. 29856-91
United States Tax Court
T.C. Memo 1993-518; 1993 Tax Ct. Memo LEXIS 529; 66 T.C.M. (CCH) 1232; November 9, 1993, Filed *529 Decision will be entered for respondent. Arthur P. Altstatt, for petitioner. Gerald W. Douglas, for respondent. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $ 64,978. The sole issue for decision is whether Larch M. Cummins (decedent) made an effective inter vivos gift of $ 10,000 to each of 20 individuals, or whether the amount transferred should be included in decedent's gross estate. Petitioner is the Estate of Larch M. Cummins, acting by and through its co-personal representatives, whose legal residence at the time of filing the petition was Eugene, Oregon. The parties submitted this case fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. On October 4, 1988, at about 3:46 p.m., decedent executed a document entitled "Irrevocable Letter of Instructions" (the letter). [1] The letter instructed Mr. King Martin at Shearson Lehman Brothers, Inc. (Shearson), to pay $ 10,000 to each of decedent's 20 nieces and nephews. The letter states that it "shall constitute sufficient authority for * * * [Shearson] to liquidate such securities of mine, coupled *530 with amounts that I may now have in cash, so that after these gift transfers are made that I will have at least $ 50,000 of my assets remaining in cash." At the time of executing the letter on October 4, 1988, decedent had cash on hand in money market funds at Shearson totaling $ 169,220. Shearson was to exercise its discretion in determining which assets to liquidate. The letter refers to the fact that decedent previously had discussed the arrangement in the letter with Mr. Martin. Elsie Cooley and Wanda Hickson, the co-personal representatives of decedent's estate, were present at the time of decedent's execution of the letter. *531 On September 30, 1988, decedent's Shearson account included $ 169,221 cash on hand in money market funds, plus marketable securities totaling more than $ 1 million. At about 4 p.m., on October 4, 1988, decedent's attorney, Arthur P. Altstatt, delivered the letter to Shearson. Prior to 4:30 p.m. on that same day, Shearson accepted and agreed to the terms and provisions of the letter. Decedent died on October 4, 1988, at 4:40 p.m. Shearson was advised of decedent's death on the morning of October 5, 1988. Other than accepting and agreeing to the provisions of the letter, Shearson was unable to fulfill the terms and requirements of the letter prior to decedent's death. On October 5, 1988, sometime in the afternoon, Shearson liquidated one of decedent's mutual fund securities and deposited the proceeds ($ 91,422) into decedent's money market account. The addition of these proceeds brought the total money market funds held in decedent's account to an amount in excess of $ 250,000. On October 6, 1988, Shearson issued checks written on its own checking account in the amount of $ 10,000 to each of the 20 individuals named and identified in decedent's letter. Shearson simultaneously *532 debited decedent's money market account in the amount of $ 200,000. In filing petitioner's estate tax return, the co-personal representatives excluded from decedent's gross estate the $ 200,000. In the probate proceeding in the Lane County, Oregon, Circuit Court, the inventory of decedent's assets filed on March 10, 1989, did not include the $ 200,000. No amendment of the estate inventory has been made or required by the Lane County, Oregon, Circuit Court or any interested party. Section 2001[2] imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. United States Trust Co. v. Helvering, 307 U.S. 57, 60 (1939). Section 2051 defines taxable estate as the gross estate less deductions. "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Sec. 2033. Gifts that are completed subsequent to the death of the donor are included in the donor's gross estate. See Estate of Gagliardi v. Commissioner, 89 T.C. 1207, 1215 (1987). *533 We must decide whether the 20 transfers of $ 10,000 constitute gifts completed prior to decedent's death. State law governs the analysis of this question.[3]Estate of Gamble v. Commissioner, 69 T.C. 942, 948 (1978). The burden of proof is on petitioner. See Estate of Gagliardi v. Commissioner, supra at 1210; see also Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). *534 To complete an inter vivos gift under Oregon law, there must be: (1) A present intent on the part of the donor to make a gift that goes into effect immediately; (2) delivery with the transfer of possession and dominion over the subject of the gift; and (3) acceptance of the gift by the donee. Manning v. United States Natl. Bank, 148 P.2d 255, 261 (Or. 1944); Estate of Grove v. Selken, 820 P.2d 895, 899 (Or. Ct. App. 1991). Delivery must constitute a transfer of possession, absolute dominion, and control.[4]Johnson v. Steen, 575 P.2d 141, 146 (Or. 1978); Hocks v. Jeremiah, 759 P.2d 312, 315 (Or. Ct. App. 1988). Decedent's letter states that "the *535 gifts herein shall be complete and irrevocable as of the time I sign this letter." This is sufficient evidence that decedent had the requisite intent to bestow the gifts immediately. Since the gifts operated entirely to their benefit, acceptance by the donees is presumed. First Natl. Bank v. Connolly, 138 P.2d 613, 625 (Or. 1943) (citing 24 Am. Jur., Gifts, sec. 117, at 792). The question here is whether decedent made effective delivery of the gifts prior to his death. Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, supra.It is undisputed that the transfers of money to the individual donees were not completed until after decedent's death. However, petitioner contends that decedent's letter to Shearson created a trust relationship. Under Oregon law, "delivery to a third person as trustee * * * is as effectual to make the [gift] valid as delivery to the donee personally." McCredie v. McCredie, 294 P. 361, 363 (Or. 1930). Thus, if decedent made delivery to Shearson as a trustee, this may have constituted effective delivery of the gifts prior to decedent's *536 death. A trust relationship does not terminate when the settlor dies. 1 Restatement, Trusts 2d, sec. 8 (comment e), at 24 (1959); 2 Restatement, Trusts 2d, sec. 335 (comment b) (1959). If Shearson was acting as decedent's trustee, delivery to Shearson effectively would have completed delivery to the donees prior to decedent's death. Consequently, the amount in question would not be includable in petitioner's gross estate. Respondent argues that the relationship between decedent and Shearson was that of principal and agent instead of settlor and trustee. An agency relationship exists when there is an agreement between the parties that one person will act on behalf of and subject to the control of the other. Jones v. Herr, 594 P.2d 410, 412 (Or. Ct. App. 1979); see 1 Restatement, Trusts 2d, sec. 1 (1959); 2A C.J.S., Agency, secs. 36-37 (1972). An agency is generally revocable at any time by the principal. The power to revoke at any time is not affected by the fact that there is a contract between the principal and agent that the agency is irrevocable. 2A C.J.S., Agency, sec. 111, at 728 (1972). An agency that is not coupled with an interest generally *537 terminates as of the date the agent has knowledge of the principal's death. See Or. Rev. Stat. sec. 127.015(1) (1991); Dickerson v. Murfield, 191 P.2d 380, 387 (Or. 1948); 2A C.J.S., Agency, sec. 135, at 754 (1972). Ordinarily, an agent does not acquire an interest in property simply by virtue of the agency contract. 1 Restatement, Trusts 2d, sec. 4, at 15 (1959) (distinguishing between agency and trusts). When an agency terminates, an agent generally no longer has a present interest in the property transferred to it by the principal, regardless of language in the agency contract declaring its irrevocability. [5] See 2A C.J.S., Agency, sec. 135, at 755 (1972). Shearson had knowledge of decedent's death prior to transferring the money to the donees. Thus, if Shearson was merely an agent of decedent prior to his death, that agency terminated upon decedent's death. Shearson, therefore, would have had no interest in the money and no right to transfer it to the donees. Id. sec. 107, at 724. Instead, decedent would have had an interest in the $ 200,000 at the time of his death and it would be included in his gross estate. Sec. 2033. *538 Typically, a stock or commodity broker is an agent of his customer, who serves as principal in the relationship.[6]Farmland Indus. v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402, 1410-1411 (8th Cir. 1989); In re Rosenbaum Grain Corp., 103 F.2d 656, 661 (7th Cir. 1939); see Estate of Gagliardi v. Commissioner, 89 T.C. at 1214 (donor's broker was an agent of donor where donor transferred funds from accounts to donees); Stern Bros. & Co. v. Commissioner, 16 T.C. 295, 315 (1951); Stovall v. Commissioner, T.C. Memo. 1983-450, affd. 762 F.2d 891 (11th Cir. 1985); Estate of Hirsch v. Commissioner, T.C. Memo. 1983-371. Specific evidence generally is required in order to prove that a broker-customer relationship is not an agency. See Antinoph v. Laverell Reynolds Secs., Inc., 1989 U.S. Dist. LEXIS 6799 (E.D. Penn. 1989), Fed. Sec. L. Rep. (CCH) par. 94,765; Ahn v. Rooney, Pace, Inc., 624 F. Supp. 368, 370 (S.D. N.Y. 1985). *539 We find no evidence that the relationship herein was a trust, rather than an agency. The general characteristics of an express [7] trust under Oregon law are: (1) Sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res. In re Thornton, 544 F.2d 1005, 1007 (9th Cir. 1976). "It is essential to the creation of an express trust that the trustor presently and unequivocally make a disposition *540 of the property by which he divests himself of the full, legal and equitable ownership thereof. The legal title must be definitely reposed in a trustee whether he is the trustor or another." Windle v. Flinn, 251 P.2d 136, 146 (Or. 1952) (citing Stephens v. Tipton, 268 P. 1014 (Or. 1928)). Decedent's letter contains no explicit reference to a trust relationship with Shearson. Nor is it "couched in language similar to that used in testamentary trusts". See 1 Restatement, Agency 2d, sec. 14B (comment d), at 63 (1958). Petitioner contends that use of the term "irrevocable" in decedent's letter exposes an implicit intent to create a trust. An examination of the surrounding circumstances suggests otherwise. See Belton v. Buesing, 402 P.2d 98, 101 (Or. 1965) (the intention to create an express trust may be inferred from circumstances attending a conveyance); *541 1 Restatement, Agency 2d, sec. 14B (comment c), at 63 (1958) ("Whether a person is a trustee, an agent, or an agent-trustee, depends upon the manifestation of intention of the parties. * * * Which, if either, of the relations is created depends upon the construction of the words used in the light of all the circumstances."). The pertinent "circumstances" are those leading up to decedent's death, including the drafting of the letter, the discussions with Mr. Martin of Shearson (referred to in the letter), and the transfers themselves. Decedent, his attorney, and his personal representatives obviously contemplated the need to make the gifts effective immediately upon execution of the letter, [8] thus showing their knowledge of the tax law. If the gifts were to be made through a trustee, it would have been a simple matter to indicate this directly by designating Shearson as trustee. The prior discussions with Mr. Martin provided decedent with an opportunity to secure Shearson's agreement to a trust relationship. In light of these circumstances, we believe that the letter would have made specific mention of a trust relationship had Shearson agreed to one. We are unable, therefore, *542 to infer the requisite intent from use of the word irrevocable, [9] or from the other circumstances surrounding the transfers. As previously noted, the relationship between a customer and a broker generally *543 is that of principal and agent; petitioner makes no argument that the relationship between decedent and Shearson was anything other than principal and agent prior to decedent's letter of instructions. An examination of the duties denoted by decedent's letter suggests the continuation of an agency, rather than the establishment of a trust relationship. A trust is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of the beneficiaries. 1 Restatement, Trusts 2d, sec. 2 (1959). Agency, on the other hand, implies a duty running to the principal. See 2A C.J.S., Agency, sec. 36, at 600 (1972). While Shearson was directed to deliver the money out of any property it deemed proper in its discretion, decedent's letter makes no suggestion that Shearson's duty to use discretion ran to the donees. Moreover, the tenor of the instructions in the letter was that they were to be carried out simply because they were decedent's instructions, not because Shearson had a duty to the donees. The presence of a "certain and ascertained" res, or trust property, see In re Thornton, 544 F.2d at 1007, *544 is also lacking here. Decedent's letter merely directed Shearson to liquidate "such assets as you deem appropriate in your discretion." Shearson did not do this until after it had been notified of decedent's death. Nor do we believe that decedent divested himself of "full, legal and equitable ownership" of the property used to effectuate the transfers to his nieces and nephews. See Windle v. Flinn, 251 P.2d at 146 (citing Stephens v. Tipton, supra). For a trust relationship to be established, the trustee must have title to the trust property. 1 Restatement, Trusts 2d, sec. 8 (comment a), at 23 (1959). There is no evidence in the record regarding the legal title to the securities in decedent's account with Shearson at the time of decedent's death. Decedent's letter to Shearson does not purport to transfer legal title to any of decedent's securities to Shearson. Moreover, on opening brief, petitioner acknowledged that decedent retained legal title to the property at the time of his death. On reply brief, petitioner contends for the first time that the securities in question were held by Shearson for decedent "in street name". According *545 to petitioner, this establishes that Shearson held legal title to the securities from the first and that decedent's letter completed the transfer of full and complete ownership over the securities. However, as noted above, there is no evidence in the record to confirm petitioner's factual assertion. Moreover, even if Shearson held decedent's securities "in street name", the conclusion drawn by petitioner from this is flawed. [10] See 1 Restatement, Trusts 2d, sec. 8 (comment i), at 25 (1959), which states: Where a bank is acting as custodian, or otherwise as agent for a customer, the mere fact that it is given title to securities of the customer, as for instance where it registers the securities in its own name or where they are registered in the name of a nominee, does not make applicable the rules governing trusts rather than those governing agency. * * * *546 If petitioner's assertion that decedent's securities were held by Shearson in street name is accurate, it simply underscores the lack of specificity involved in decedent's relationship with Shearson. Generally, the primary distinction between an agency and trust is the trustee's possession of title in the property over which he serves as fiduciary. 1 Restatement, Trusts 2d, sec. 8 (comment a) (1959); see First Natl. Bank v. Hinkle, 162 P. 1092, 1094 (Okla. 1917), stating: It is true that mere delivery of property to a person to sell and pay the proceeds to another may create only an agency. * * * The essential distinction, applicable to this class of cases, distinguishing a mere agency from a trust, seems to lie in whether or not the principal or donor parts entirely with the control, possession, and right of disposition of the property. In the case of a broker holding securities in street name, that distinction is blurred. Thus, if decedent's securities were held in Shearson's street name before decedent's death, it would be even more important for petitioner to clearly show that the broker-customer relationship between decedent and Shearson *547 was converted to a trust. [11] Petitioner has provided no evidence of such a conversion. Nor is there any evidence to suggest that equitable title in the property was transferred during decedent's lifetime. Contrary to petitioner's contention, the creation of a trust in Oregon appears to require transfer of equitable ownership. Windle v. Flinn, supra at 146. "Equitable title" is defined as "the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another." Black's Law Dictionary 1486 (6th ed. 1991). Decedent's letter gives the impression *548 that, while in Shearson's hands, the property in question remained decedent's. It directs Shearson to liquidate "such securities of mine" and transfer cash "that I may now have". (Emphasis added.) Other than this letter, there is no other evidence concerning decedent's intent. On this record, therefore, it appears that no transfer of equitable title was made; thus, no trust could have been created. This case is nearly identical on its facts and the relevant provisions of State law to those presented in Estate of Gagliardi v. Commissioner, 89 T.C. 1207 (1987). In that case, the decedent gave his son a special power of attorney with respect to assets held for him by Bache, Halsey, Stuart, Shields Inc. (Bache). Id. at 1208. The decedent's son directed that certain securities be sold in order to give cash gifts to the decedent's children and their spouses. All requests to Bache for the issuance of checks were in writing and specified the amounts and payees of the checks. As in the instant case, "All the requests to Bache provided that decedent 'relinquished all right, title, and interest' and 'finally and *549 irrevocably released and discharged [Bache] of any claims by * * * my legal representatives with reference to the foregoing' funds requested to be transferred." Id. at 1209 n.4 (alterations in original). On February 18, 1982, the decedent's son requested Bache to issue several checks. The decedent died at 12:15 a.m. on February 22, 1982. Id. at 1208. Later that same day, Bache issued the checks requested. Id. at 1209. The applicable State law in Estate of Gagliardi required donative intent and actual or constructive delivery such that the donor parted with all dominion and control in order to effect a valid gift. Delivery to a third party also could be sufficient to effect a gift. Id. at 1214. Also under applicable Pennsylvania law, an agent's authority terminated upon the principal's death. Id. Consequently, we held that Bache did not have authority on February 22 to sell securities and deliver checks to the donees, and those amounts improperly were excluded from decedent's gross estate. Id. at 1214-1215. Petitioner *550 has not attempted to distinguish Estate of Gagliardi from the instant case. Our own comparison does not reveal any significant distinctions. In light of the foregoing, we hold that decedent's letter did not establish a trust relationship with Shearson as trustee. Because no trust was established, the transfer of money to the 20 individuals was not a gift completed prior to decedent's death. The amount in question must therefore be included in his gross estate. Decision will be entered for respondent. Footnotes
1. The letter reads in its entirety: IRREVOCABLE LETTER OF INSTRUCTIONS
Dear King: As we discussed about a month ago, and after review with my attorney, Art Altstatt, you are hereby given the IRREVOCABLE instruction to pay the sum of $ 10,000 each, in cash, to the following named individuals: Yvonne Harritt, Hazel Keyes, Dora Edwards, Donald Keyes, Elsie Cooley, Virginia Darkens, Leslie Burbee, Wanda Hickson, Richard Cummins, Delano Cummins, Mildred DeRusse, Connie Kovach, Leroy Boyd, Delores Boyd, Weslie Boyd, Rosana Campbell, Linda Reed, Jerrie Boyd, Lavonne Wissinger, and Michelle (last name unknown; that is, the daughter of my deceased brother, Bernard Cummins). This letter shall constitute sufficient authority for you to liquidate such securities of mine, coupled with amounts that I may now have in cash, so that after these gift transfers are made that I will have at least $ 50,000 of my assets remaining in cash. You may liquidate such assets as you deem appropriate in your discretion. Addresses and social security numbers of the above named individuals can be obtained from Art Altstatt after he has had an opportunity to get this information from my niece, Elsie Cooley. I am giving this letter to my attorney, Art Altstatt, to be hand delivered to you, but the gifts herein shall be complete and irrevocable as of the time I sign this letter.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, Oct. 4, 1988, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The regulations provide guidance as to when a gift is complete for purposes of the Federal gift tax. Estate of Metzger v. Commissioner, 100 T.C. 204, 208 (1993). Sec. 25.2511-2(b), Gift Tax Regs., provides that a gift generally is complete when the donor has so parted with dominion and control as to leave him with no power to change its disposition. See id. Whether a donor has so parted with dominion and control of amounts transferred as to leave him with no power to change the disposition is governed by State law. Estate of Dillingham v. Commissioner, 88 T.C. 1569, 1575 (1987), affd. 903 F.2d 760↩ (10th Cir. 1990).
4. Delivery is the way a donor gives up the power to revoke a gift. Estate of Grove v. Selken, 820 P.2d 895, 899-900 (Or. Ct. App. 1991) (citing Liebe v. Battmann, 54 P. 179↩ (Or. 1898)).
5. Petitioner insists that we are bound by Oregon statutory law to construe the term "irrevocable" to mean unable to be revoked, altered, or changed in any manner by either party to the agreement. Decedent's letter states that Shearson is "given the IRREVOCABLE instruction to pay" $ 10,000 to each donee. The letter also states that "the gifts herein shall be complete and irrevocable as of the time I sign this letter." We agree with respondent that this is a question of law to be decided by this Court. Moreover, the statement is clearly incorrect on its face. At the time decedent signed the letter, Shearson had not yet accepted its terms. Therefore, the gifts could not have been complete or irrevocable at that time.↩
6. Webster's Third New International Dictionary 281-282 (1986) defines "broker" as an agent middleman who for a fee or commission negotiates contracts of purchase and sale (as of real estate, commodities, or securities) between buyers and sellers without himself taking title to that which is the subject of negotiation and usually without having physical possession of it * * * See Black's Law Dictionary 193 (6th ed. 1991) (defining broker as "An agent employed to make bargains and contracts for a compensation. A dealer in securities issued by others.").↩
7. Neither party suggests that a constructive or resulting trust was created.↩
8. The letter states: I am giving this letter to my attorney, Art Altstatt, to be hand delivered to you, but the gifts herein shall be complete and irrevocable as of the time I sign this letter.↩
9. Petitioner argues that an Oregon court would interpret the term "irrevocable" in its true "English-language" sense, thus giving rise to the conclusion that the relationship between decedent and Shearson had not terminated. As noted above, however, when an agency is not coupled with an interest, the death of the principal operates to revoke the agency, regardless of the fact that the agency is in terms irrevocable. 2A C.J.S., Agency, sec. 135, at 755 (1972). As discussed infra↩, there simply is no evidence in the record to suggest that Shearson -- whatever its status -- had an interest in the property transferred.
10. It is not clear whether or how petitioner's "street name" argument applies to the $ 169,220 that was in money market funds at decedent's death. Common explanations of "street name" arrangements, including those cited by petitioner, refer only to "securities" held by a broker. See Investment and Securities Dictionary 279 (McFarland & Co., Inc. 1986); Dictionary of Finance 440 (McMillian Pub. Co. 1988). Petitioner's money market funds are referred to in the stipulation as "cash on hand".↩
11. See 1 Restatement, Trusts 2d, sec. 8 (comment h), at 25 (1959), which states: Where the agent has title. The mere fact that an agent is entrusted not merely with possession but also with the title to property for his principal does not make applicable the rules which are applicable to trusts, but the rules applicable to agency are applicable. See Restatement of Agency 2d, § 14B↩.