111 T.C. No. 3

UNITED STATES TAX COURT

ESTATE OF SARAH H. NEWMAN, DECEASED, MARK M. NEWMAN,
CO-EXECUTOR AND MINNA N. NATHANSON, CO-EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17516-96.                    Filed July 28, 1998.

        Decedent (D) executed a power of attorney
appointing her son (S) attorney-in-fact.  Prior to D's
death, S drew six checks against D's checking account
payable to himself, his wife, his brother, his nieces,
and two other individuals.  These checks were neither
accepted, nor paid, by the drawee bank until after D's
death.  Petitioner argues that these checks represent
completed gifts of funds in D's checking account that
are not includable in D's gross estate.

        <u>Held</u>:  D maintained dominion and control over the
amounts in her checking account against which the
checks were written until her death.  Accordingly, the
checks were not completed gifts during her lifetime.

        <u>Held</u>, <u>further</u>:  These noncharitable gifts are not
deemed to be complete under the theory that the payment
of the checks after D's death relates back to the date
of delivery prior to D's death.  <u>Estate of Metzger v.
Commissioner</u>, 100 T.C. 204 (1993), affd. 38 F.3d 118

(4th Cir. 1994), distinguished.  Thus, the funds represented by the checks written on D's bank account and not paid until after her death are includable in her gross estate.  Secs. 2031, 2033, I.R.C.; Estate of Gagliardi v. Commissioner, 89 T.C. 1207 (1987).

Mark M. Newman (a co-executor), for petitioner.

Charles M. Ruchelman and William J. Gregg, for respondent.

RUWE, Judge:  Respondent determined a deficiency in petitioner's Federal estate tax of $46,724.  After concessions, the sole issue for decision is whether funds in decedent's bank account, upon which checks were written before but paid after decedent's death for purported noncharitable gifts, are includable in the gross estate.

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulation of facts, the supplemental stipulation of facts, the second supplemental stipulation of facts, and the stipulation of agreed adjustments are incorporated herein by this reference.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Sarah H. Newman, hereinafter referred to as decedent, died testate on September 28, 1992.  She was domiciled in Washington, D.C., at the time of her death.  Her son Mark M. Newman (Mark)

and daughter Minna N. Nathanson (Minna) were appointed personal representatives by the Register of Wills, Superior Court of the District of Columbia. Mark resided in Washington, D.C., at the time of filing the petition for redetermination. At the time of her death, decedent had another surviving child, Paul H. Newman (Paul).

On May 14, 1985, decedent and her husband, Simon M. Newman,[1] granted Mark a written power of attorney. This power of attorney provided that Mark, as attorney-in-fact, could:

1) collect, recover and receive any and all moneys, sums, profits, dividends, interests, claims, debts, things, and assets regardless of what form and including real and personal property whatsoever now due or in the future to become due to anyone or group of us; and to execute and deliver receipts, releases and other discharges of debt to anyone or group of us;

2) pay, settle, compromise, arbitrate and adjust all monies, sums, claims, and debts whatsoever now or in the future owed by anyone or group of us;

3) receive, endorse and collect any checks payable to the order of anyone or group of us now or in the future in existence;

4) make, negotiate, sell, deliver any lease, mortgage or deed pertaining to or including any real property, real estate, lands, minerals or other rights now or in the future, anyone or group of us owns or has any ownership or controlling (full or partially) interest in;

5) to take possession of and/or enter upon any real property, real estate, lands, tenements or hereditaments which may now or in the future belong to anyone or group of us, the possession of which anyone

---

[1]Simon M. Newman died on June 6, 1985.

or group of us now or in the future will be entitled; and

6) to employ, hire, retain and contract for attorneys, architects, contractors, clerks, laborers and others, to remove them and/or appoint others in their place and to pay such persons fees, wages, salaries, expenses and other remuneration as he/she shall deem proper.

The power of attorney also provided a clause which ratified Mark's actions in carrying out the powers granted above:

Each of us further gives and grants to said Attorney-In-Fact full power and authority to do and perform every act necessary and proper to be done in the exercise of any of the foregoing powers as fully as either of us might or could do if personally present hereby ratifying and confirming all that said Attorney-In-Fact shall lawfully do or cause to be done for us.

Finally, the power of attorney granted to Mark was not to be changed orally. No reference to making gifts is contained in this document.

From December 15, 1989, until her death, decedent maintained checking account No. 05-011258-6 with Columbia First Bank (CFB). Decedent maintained this account solely in her name until sometime between September 14 and October 14, 1992, when Mark's name was added to the account. The following checks drawn on this account are relevant to the issue in this case:

| Check No. | Amount | Payee | Date on Check | Date Accepted and Paid by CFB |
|-----------|--------|-------|---------------|-------------------------------|
| 1652 | $10,000 | Mollie Nathanson | 9/23/92 | 10/05/92 |
| 1653 | 5,000 | Minna Lev | 9/23/92 | 10/07/92 |
| 1654 | 60,000 | Paul & Joyce Newman | 9/24/92 | 10/02/92 |
| 1655 | 5,000 | Robert Davidson | 9/24/92 | 10/02/92 |
| 1656 | 10,000 | Mark & Diana Newman | 9/24/92 | 10/01/92 |
| 1657 | 5,000 | Tina Reiss | 9/24/92 | 10/05/92 |

All the above checks were signed by Mark and dated prior to decedent's death. However, none of these checks were accepted or paid by the drawee bank until after decedent's death. Petitioner claims that the above checks were gifts made during decedent's lifetime. Petitioner also contends that it was decedent's desire that the $60,000 given to Paul be distributed amongst himself, his children, and his grandchildren and that each of the distributees received $10,000 or less per person.

On or about June 1, 1993, a United States Estate (and Generation-Skipping Transfer) Tax Return, Form 706, was filed on behalf of decedent's estate. This return indicated that decedent did not make any taxable gifts during her lifetime. Furthermore, the Schedule C attached to the Form 706 reflects the value of decedent's checking account No. 05-011258-6 as $5,212 at the date of her death.

OPINION

The sole issue in this case is whether the funds in decedent's bank account represented by the six checks, which were

outstanding at the time of decedent's death are includable in her gross estate. Petitioner argues that the amount in question constitutes nontaxable completed gifts and should be excluded from decedent's gross estate. Respondent, however, argues that the checks do not represent completed nontaxable gifts and that the value of the underlying funds should be included in decedent's gross estate. Respondent bases his argument on the fact that the checks were not accepted or paid by CFB before decedent's death and that, therefore, decedent maintained dominion and control over the underlying funds until her death with the result that the gifts were incomplete during decedent's lifetime.[2] Furthermore, respondent disagrees with petitioner's argument that the payment of the checks by CFB after decedent's death relates back to the date on the checks.

Section 2001(a) imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. The taxable estate is defined in section 2051 as the gross estate less deductions. Pursuant to sections 2031 and 2033, the value of the gross estate generally includes the value of all property to the extent of the interest therein of decedent

---

[2]Respondent also argues that Mark, as attorney-in-fact, had no authority to make gifts on behalf of decedent. Alternatively, respondent argues that the $60,000 check to Paul and Joyce Newman exceeds the $10,000 exclusion under sec. 2503(b) and, therefore, $40,000 of that check is an adjusted taxable gift, which is added to decedent's reported gross estate. Because we find for respondent on other grounds, we need not address these arguments.

at the time of her death.  <u>Estate of Gagliardi v. Commissioner</u>, 89 T.C. 1207, 1210 (1987).  Section 20.2031-5, Estate Tax Regs., provides that "The amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate."  If the checks in question constitute completed gifts during decedent's lifetime, the funds represented by those checks would not be includable in decedent's gross estate.[3]

A gift is not consummated until put beyond the donor's recall.  <u>Burnet v. Guggenheim</u>, 288 U.S. 280, 286 (1933).  Section 25.2511-2(b), Gift Tax Regs., provides in relevant part:

> (b)  As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete.  But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined.  * * *

---

[3]Although sec. 2501 imposes a tax on the transfer of property by gift, sec. 2503(b) provides that the first $10,000 of gifts made to any person during a year is excluded in computing the total amount of gifts made during that year.  <u>Estate of Cristofani v. Commissioner</u>, 97 T.C. 74, 78 (1991).  Consequently, a gift of $10,000 or less completed prior to decedent's death is neither included in her gross estate nor taxed as a gift.

Therefore, a gift is not considered complete until the donor has parted with dominion and control so as to leave her with no power to change its disposition.  <u>Estate of Metzger v. Commissioner</u>, 100 T.C. 204, 208 (1993), affd. 38 F.3d 118 (4th Cir. 1994).

We turn to local law to determine whether decedent parted with dominion and control over the funds in her checking account such that she had no power to change their disposition.  <u>Estate of Dillingham v. Commissioner</u>, 88 T.C. 1569, 1575 (1987), affd. 903 F.2d 760 (10th Cir. 1990).  In the District of Columbia, a check is generally considered conditional payment.  <u>Daine v. Price</u>, 63 A.2d 767, 768 (D.C. 1949).  Under the law of the District of Columbia, in effect in 1992, "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."  D.C. Code Ann. sec. 28:3-409(1) (1981).

In <u>Estate of Metzger v. Commissioner</u>, <u>supra</u>, we interpreted an identical provision adopted in the State of Maryland.[4]

---

[4]In <u>Estate of Metzger v. Commissioner</u>, 100 T.C. 204, 209 (1993), affd. 38 F.3d 118 (4th Cir. 1994), we stated:

> Md. Com. Law I Code Ann. section 3-409(1) (1992) provides:
>
>> (1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the

(continued...)

Because the donor could revoke the gift by stopping payment on the check or withdrawing the funds prior to the drawee's[5] acceptance of the check, we stated that in the State of Maryland, if a check is intended as a gift and is delivered to the donee, the gift remains incomplete until the donee presents the check for payment and the check is accepted by the drawee. Id. at 209.

Petitioner does not argue that D.C. Code Ann. sec. 28:3-409(1) (1981) is distinguishable from the aforementioned Maryland statute. Rather, petitioner argues that because of decedent's condition, she was essentially unable to stop payment on the checks. Petitioner claims that decedent's condition was such that she was unable to go to the bank or to get to a telephone in order to request a stop order from CFB. Thus, petitioner asserts, the checks were not revocable and were complete when delivered to the donees. We do not find petitioner's argument persuasive.

Prior to the time that a drawee bank accepts a check, a customer may order the bank to stop payment by telephone, which would be effective for a period of 24 hours. D.C. Code Ann. sec. 28:4-303(1) and (2) (1981). After that time, a written stop

_____

[4](...continued)
instrument until he accepts it.

[5]In commercial law, the term "drawee" means the bank in which the donor has funds on deposit and against which the check is drawn. D.C. Code Ann. sec. 28:3-103(a)(2) (Supp. 1995) (the term drawee "means a person ordered in a draft to make payment.").

payment order made by the customer would be effective for 6 months.  D.C. Code Ann. sec. 28:4-403(2) (1981).  Although testimony was presented which portrays decedent as "bedridden" prior to her death, there is no evidence that she had absolutely no access to a telephone.  Further, because Mark was also a customer[6] on the account in question, he could have ordered CFB to stop payment at decedent's request.

Petitioner does not direct us to, nor have we found, any State that recognizes delivery of a check to be a completed gift of the underlying funds.  See 38A C.J.S., Gifts, sec. 56 (1996) ("The gift of the donor's own check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee.").  Furthermore, mere possession of a power to revoke, not the ability to exercise it, is controlling. Estate of Alperstein v. Commissioner, 71 T.C. 351, 353-354 (1978), affd. 613 F.2d 1213 (2d Cir. 1979).  Accordingly, we find that decedent possessed the power to revoke the checks until accepted or paid by CFB.  Because CFB did not accept or pay the checks until after decedent's death, they were not completed gifts under the law of the District of Columbia.

Nevertheless, petitioner argues that under the relation-back doctrine, the payment of checks by the drawee relates back to the

---

[6]D.C. Code Ann. sec. 28:4-104(1)(e) (1981), defines "customer" to mean "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank".  (Emphasis added.)

date the checks were issued which was prior to decedent's death.[7]
We have applied the relation-back doctrine under certain
circumstances in prior cases. Estate of Metzger v. Commissioner,
supra at 215; Estate of Belcher v. Commissioner, 83 T.C. 227, 232
(1984) (held that checks mailed to charitable donees prior to the
donor's death but not paid until after death related back to the
date of delivery, thus reducing the donor's gross estate); Estate
of Spiegel v. Commissioner, 12 T.C. 524 (1949) (held that
charitable contributions made by check delivered in 1942 but
deposited in 1943 related back to 1942 for deduction).  However,
we have specifically declined to extend the relation-back
doctrine where noncharitable gifts were made by check and the
donor died while the checks were still outstanding.  Estate of
Gagliardi v. Commissioner, 89 T.C. at 1212.

In Estate of Gagliardi v. Commissioner, supra, the donor,
through his son acting as attorney-in-fact, issued checks,
representing gifts, to his children.  Some of these checks were
paid by the drawee prior to the donor's death.  We held that the
funds represented by those checks should not be included in the
donor's gross estate.  Id. at 1211.  However, some of the checks
were not paid until after the donor died.  In regard to the
outstanding noncharitable gift checks paid by the drawee after
the donor's death, we declined to extend the relation-back

---

[7]Petitioner relies on the dates written on the checks in
question.

doctrine, distinguishing those checks from the charitable contributions made in Estate of Belcher v. Commissioner, supra, and Estate of Spiegel v. Commissioner, supra, stating:

> Our decision in Estate of Belcher was based on the special characteristics of charitable contributions, including the possibility that the estate would receive an offsetting deduction under section 2055 if the funds represented by the checks were included in the gross estate (83 T.C. at 236-238) and, more importantly, our prior decision in Estate of Spiegel v. Commissioner, 12 T.C. 524 (1949), involving the deductibility of charitable contributions for income tax purposes. In Estate of Spiegel we held that charitable contributions made by check were deductible in the year the check was issued rather than the year paid. Not following this case in Estate of Belcher would have led to the result that payments that had been deducted for income tax purposes were still includable in the gross estate.

> These bases of decision are not present in the noncharitable gift situation--gifts are not deductible for income tax purposes and, if made after death, do not reduce the gross estate for estate tax purposes. Thus, the reasoning of Estate of Belcher does not warrant extension of the relation-back doctrine to noncharitable gifts. * * * [Estate of Gagliardi v. Commissioner, supra at 1212.]

The Court of Appeals for the Seventh Circuit also declined to extend the relation-back doctrine under similar circumstances. McCarthy v. United States, 806 F.2d 129 (7th Cir. 1986). In McCarthy v. United States, supra, prior to the donor's death, she maintained a joint checking account with her son. The donor's son wrote several checks which were intended as gifts to various relatives. Although these checks were delivered or mailed prior to the donor's death, they were not cashed until after that time.

Id. at 130. The trustees of the donor's estate maintained that the relation-back doctrine should be extended to noncharitable gifts made by check. The trustees argued that there were no policy considerations which would justify treating charitable donations differently than noncharitable gifts. The Court of Appeals for the Seventh Circuit disagreed, stating:

> there remains sufficient justification compelling the inclusion of outstanding checks issued to noncharitable donees. The Internal Revenue Code now exempts only those gifts made by a decedent up to $10,000 per donee, per year. I.R.C. § 2035(b)(2) (1985). To the extent of that exemption, application of the relation back doctrine fosters estate tax avoidance. By issuing a check to a noncharitable donee with the understanding that it not be cashed until after his death, a decedent may effectively bequeath up to $10,000 per donee, thus avoiding the estate tax consequences normally attending such transactions. * * * [Id. at 132.]

In Estate of Metzger v. Commissioner, 100 T.C. 204 (1993), we extended the relation-back doctrine to a situation involving noncharitable gift checks. In that case, the checks were issued to noncharitable donees in December 1985. The donees deposited the checks on December 31, 1985; however, the checks did not clear the drawee until after the New Year holiday in 1986. Id. at 214. The question was whether the gifts occurred in the first year or in the second. A critical difference between the facts in Estate of Gagliardi v. Commissioner, 89 T.C. 1207 (1987), and McCarthy v. United States, supra, and the facts in Estate of Metzger v. Commissioner, supra, was that the donor in Estate of

Metzger was still alive when the checks were paid by the drawee.
In addition, the checks were deposited before the end of the year
and cleared the drawee bank immediately after the New Year
holiday.  Therefore, we found Estate of Gagliardi v.
Commissioner, supra, factually distinguishable and held that the
payment of the checks by the drawee in January related back to
the time the checks were deposited in December.  Estate of
Metzger v. Commissioner, supra at 214-215.  In extending the
relation-back doctrine to noncharitable gifts, we stated:

> We see no reason for refusing to apply the
> relation-back doctrine to noncharitable gifts where the
> taxpayer is able to establish:  (1) The donor's intent
> to make a gift, (2) unconditional delivery of the
> check, and (3) presentment of the check within the year
> for which favorable tax treatment is sought and within
> a reasonable time of issuance.  * * *  [Id. at 215.]

In claiming that the relation-back doctrine is applicable to
noncharitable gift checks paid after the donor's death,
petitioner relies upon our opinion in Estate of Metzger v.
Commissioner, supra.  We do not find the quoted portion of our
opinion in Estate of Metzger applicable where the donor dies
prior to the payment of the checks.  The Court of Appeals for the
Fourth Circuit, affirming our decision in Estate of Metzger,
recognized the important distinction between the facts of that
case and those in McCarthy v. United States, supra, and Estate of
Gagliardi v. Commissioner, supra, stating:

> We do not dispute the wisdom of declining to extend the relation-back doctrine in the circumstances presented in McCarthy and Gagliardi, when the donor died while the checks were still outstanding. Clearly there is a very real danger of fostering estate tax avoidance in cases in which checks are not cashed until after the donor dies. However, that is not the situation in this case. [Estate of Metzger v. Commissioner, 38 F.3d at 122.]

Unlike decedent here, the donor in Estate of Metzger v. Commissioner, supra, was alive at the time the checks were presented and paid by the drawee. The facts in the case before us are more analogous to those presented in McCarthy v. United States, supra, and Estate of Gagliardi v. Commissioner, supra.[8] Therefore, we hold that the relation-back doctrine does not apply to checks representing noncharitable gifts which were accepted and paid by the drawee after decedent's death.

Accordingly, the checks in issue were not completed gifts during decedent's lifetime, and the value of the underlying funds is includable in decedent's gross estate. Because our holding resolves the sole issue before us, we need not address the merits of respondent's other arguments.

Decision will be entered

under Rule 155.

---

[8]We note that petitioner neither cites nor attempts to distinguish the factually similar cases of McCarthy v. United States, 806 F.2d 129 (7th Cir. 1986), and Estate of Gagliardi v. Commissioner, 89 T.C. 1207 (1987).