937 A.2d 195

**Michael D. STACHOWSKI**

**v.**

**SYSCO FOOD SERVICES OF BALTIMORE, INC., et al.**

**No. 18, Sept. Term, 2007.**

**Court of Appeals of Maryland.**

**Dec. 11, 2007.**

508

William O.B. Finch, Jr., Westminster, for petitioner.

David A. Skomba (Maija B. Jackson, Franklin & Prokopik, P.C., Baltimore), on brief, for respondents.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned), and DALE R. CATHELL (Retired, specially assigned), JJ.

RAKER, J.

We are called upon in this case to interpret a provision of the Workers' Compensation Act, Maryland Code (1991, 1999 Repl.Vol., 2006 Cum.Supp.), §§ 9–101 to –1201 of the

Labor and Employment Article.[1] We must decide whether a claimant who filed for modification of an award under § 9–736(b) met the statutory requirement of filing within five years of the "last compensation payment." We shall hold that petitioner's application to modify his award is timely because we find that the term "last compensation payment" is based on the date when the last payment by check was received by the claimant, either directly or by the claimant's attorney or the claimant's authorized agent.

## I.

Petitioner, Michael Stachowski, sustained a work-related injury while employed with Sysco Food Services of Baltimore, Inc., in November 1988. He filed a timely workers' compensation claim with the Maryland Workers' Compensation Commission (the "Commission") and was awarded compensation in an order dated October 12, 1998. The last payments pursuant to the award were in the form of checks from Sysco's insurer,[2] one payable to Stachowski in the amount of $310.50 for additional lost wages, and the second payable to Stachowski's counsel, Goldstein & Byrne, in the amount of $34.50 for attorney fees. Both checks were mailed on October 21, 1998, to Terrence Byrne at the office of Goldstein & Byrne, and were received the next day, on October 22, 1998. Mr. Byrne then forwarded Stachowski's check to him on October 26, and bank records indicate that the check cleared on November 2, 1998.

No further action occurred in relation to the claim until October 22, 2003, when Mr. Stachowski filed for a modification of the original workers' compensation award. He requested reimbursement for medical bills and additional temporary

---

1. All subsequent statutory references herein shall be to the Labor and Employment Article, Md.Code (1991, 1999 Repl.Vol., 2006 Cum.Supp.), unless otherwise indicated.

2. All transactions giving rise to petitioner's appeal were performed by Wausau Insurance Company, the workers' compensation insurance carrier of Sysco Food Services of Baltimore, Inc. For simplicity, we will refer to both respondents singularly as Sysco.

disability benefits covering June 23, 2003 to September 21, 2003, as a result of a surgery arising out of his original injury. The claim was filed exactly five years and one day from the date the last compensation check was mailed, and five years exactly from the date Stachowski's counsel received the check.

The Commission held a hearing on July 12, 2004, and determined that Sysco should reimburse Stachowski for the medical expenses of the surgery, but that Stachowski's request for modification of the compensation award was time-barred by the limitations set forth in § 9–736(b). Stachowski's rehearing request was denied. On September 9, 2004, Sysco appealed the part of the Commission's decision that ordered payment of medical expenses. On September 15, 2004, Stachowski appealed the Commission's denial of benefits. Both parties cross-petitioned for partial summary judgment on the benefits issue in the Circuit Court for Howard County.[3] The Circuit Court granted Sysco's motion and denied Stachowski's cross-motion on August 16, 2005. The Circuit Court granted a joint motion to revise and issued an order certifying the rulings on the partial summary judgment motions as final judgments pursuant to Md. Rule 2–602(b), which allows a court to enter a final judgment as to fewer than all claims where there is no just reason for delay. Stachowski noted a timely appeal to the Court of Special Appeals. In an unreported decision filed on January 18, 2007, the Court of Special Appeals affirmed the Circuit Court's grant of partial summary judgment in favor of Sysco based on the limitations provision of § 9–736(b). We granted certiorari to decide whether the "last compensation payment" is the date when the check is mailed or when it is received.

## II.

Stachowski argues that the term "last compensation payment" in § 9–736(b) of the Workers' Compensation Act should

---

3. The parties eventually reached a settlement regarding the reimbursement of medical expenses through a binding arbitration agreement dated December 2, 2005, and so there is no further issue related to that matter.

be the date when the check is *received* by a claimant, either individually or through his attorney. He argues no deference should be given to the Commission's construction, which bases the five-year statute of limitations on the date of mailing, because it is contrary to the plain language of the statute. Stachowski relies on the common sense understanding of the term payment, standard usage of the term in the commercial law context, select cases from our jurisprudence, and the definition of the term "payment" from Black's Law Dictionary to conclude that payment is generally regarded as when the check is received.[4]

Respondent argues that the interpretation of the "last compensation payment" as the date when the check is mailed is appropriate and that the Commission's construction should be given deference. Sysco relates how the liberal construction generally afforded to the Workers' Compensation Act does not apply to the limitations provision and contends, in any case, that the statute is unambiguous in its plain language. In so doing, Sysco relies on an interpretation of select case law that contradicts petitioner's interpretation. In addition, respondent analogizes to Md. Rule 1–321(a)[5] and one of the Commission's promulgated regulations, COMAR 14.09.01.04, to demonstrate that the definition of payment as the date of mailing is not novel or inconsistent with the purpose of the limitations clause.

Ultimately at issue in this case is whether § 9–736(b) limits the modification of a prior workers' compensation award where the petition to modify is filed five years exactly from the date when the check was received. Section 9–736(b) provides as follows:

---

4. Petitioner's brief argues payment is complete on the date when the check is honored by the bank and, alternatively, the date when the check is received. At oral argument, however, the first contention was withdrawn and only the second was argued.

5. Among other things, Md. Rule 1–321(a) provides that "[s]ervice by mail is complete upon mailing."

"(b)(1) The Commission has continuing powers and jurisdiction over each claim under this title.

"(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

"(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:

(i) the date of the accident;

(ii) the date of disablement; or

(iii) the last compensation payment."

Petitioner and respondent agree that subsection (b)(3)(iii), "the last compensation payment," controls in this case.

## III.

■ The Workers' Compensation Act (the "Act") was enacted in 1914. 1914 Md. Laws, Chap. 800 (codified at Md.Code (1914), Art. 101 §§ 1–64). We have summarized the purpose of the Workers' Compensation Act as follows:

"[T]he overall purpose of the Act ... is to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment."

*Howard Co. Ass'n for Retard. Cit. v. Walls,* 288 Md. 526, 531, 418 A.2d 1210, 1214 (1980). In light of this purpose, we have often repeated that the statute "should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant." *Design Kitchen v. Lagos,* 388 Md. 718, 724, 882 A.2d 817, 821 (2005) (quoting *Harris v. Board of Education,* 375 Md. 21, 57, 825 A.2d 365, 387 (2003)). This Court has long recognized, however, that "[t]he general rule of liberal construction of the Workers' Compensation Act is not applicable to the limitations provision of § 9–736." *Stevens v. Rite–Aid,* 340 Md. 555, 568, 667 A.2d 642, 649 (1995).

In the original act, the Commission's power to modify an award was unrestricted:

"Section 54 of the Workmen's Compensation Act, prior to the passage of chapter 342 of the Acts of 1931, provided that: 'The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or change with respect to former findings or orders with respect thereto as in its opinion may be justified.' Under the law as it then stood there was no stated limitation upon the time within which the commission might reopen a case for the purpose of modifying an award."

*Ireland v. Shipley*, 165 Md. 90, 96, 166 A. 593, 596 (1933) (internal citation omitted). *See also* Md.Code (1914), Art. 101 § 54.

In 1931, the Act was amended to provide a time limit for reopening a final award. As explained by Judge Offutt, writing for this Court:

"[C]hapter 342 of the Acts of 1931 repealed and re-enacted section 54, amending it by adding these words 'provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within one year next following the final award of compensation.'"

*Ireland v. Shipley*, 165 Md. at 96, 166 A. at 596. Thus the original language of the statute limited the time for modifying an award to one year from "the final award of compensation." 1931 Md. Laws, Chap. 342. The date of the final award of compensation was the date of the Commission's order granting a final award. *Ireland v. Shipley*, 165 Md. at 100–01, 166 A. at 598.

In 1935, the time limit was increased from one to three years, and the limitation for modification was extended to apply to non-final awards as well. The provision then limited modification to "within three years next following the last final *award* of compensation" for final awards, and "within three years next following the last *payment* of compensation" for

awards not designated final. 1935 Md. Laws, Chap. 236 (codified as amended at Md.Code (1924, 1935 Cum.Supp.), Art. 101 § 54) (emphasis added).

In 1957, the provision was recodified as § 40(c), the predecessor to § 7–936(b). 1957 Md. Laws, Chap. 814 (codified as amended at Md.Code (1957), Art. 101 § 40(c)). Section 40(c) omitted the previous distinction between final and nonfinal awards, and adopted the limitation of three years "following the last *payment* of compensation" for all awards, irrespective of their finality. *Id.* (emphasis added). Thus the date of payment became controlling for final awards as well, rather than the date of the Commission's order.

The provision was amended again in 1969, with the result of increasing the time limit for modifications from three to five years in its final version.[6] 1969 Md. Laws, Chap. 116 (codified as amended at Md.Code (1957, 1969 Cum.Supp.), Art. 101 § 40(c)). Subsequent amendments have not affected the substance of the five year limitations provision dating from the "last compensation payment."[7]

## IV.

We review a grant of summary judgment de novo. *Salamon v. Progressive,* 379 Md. 301, 307, 841 A.2d 858, 862 (2004). "When reviewing a grant of summary judgment, we must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such

6.  Interestingly, proposed Senate Bill 309 in 1969 originally contained language abolishing the time limit provision entirely, but was amended before adoption to simply increase the limitations period. 1969 Md. Laws, Chap. 116.

7.  In 1991, the provision was recodified as § 9–736(b) from former Art. 101, § 40 without substantive change. 1991 Md. Laws, Chap. 8 (codified at Md.Code (1991), § 9–736(b) of the Labor and Employment Article). In 2002, Section 9–736(b)(3) was amended to provide for two additional benchmarks that could affect the time period for modification, but neither is at issue in this case. 2002 Md. Laws, Chap. 568 (codified at Md.Code (1991, 1999 Repl.Vol., 2002 Cum.Supp.), § 9–736(b) of the Labor and Employment Article).

dispute is absent will we proceed to review determinations of law." *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18, 24 (2003). Here, the parties stipulate to the relevant facts, and so we review the lower court's interpretation of the statute to see if it is legally correct. *Salamon,* 379 Md. at 307, 841 A.2d at 862.

In order to determine the meaning of the "last payment of compensation" in § 7–936(b), we look to the principles of statutory construction. The primary goal of statutory construction is to ascertain the intent of the Legislature. *Clipper Windpower v. Sprenger,* 399 Md. 539, 553, 924 A.2d 1160, 1168 (2007). Our inquiry begins with the plain language of the statute. *Casey v. Mayor and City Council of Rockville,* 400 Md. 259, 288, 929 A.2d 74, 92 (2007). Ordinary, popular understanding of the English language dictates interpretation of the plain language of the text of a statute. *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006). If the statutory language is clear and unambiguous, we need not look beyond the statute to determine the Legislature's intent. *Casey,* 400 Md. at 288, 929 A.2d at 92.

We have said that "[i]n construing the plain language, '[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.'" *Kushell v. DNR,* 385 Md. 563, 576–77, 870 A.2d 186, 193 (2005) (quoting *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003)). Statutory text should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. *Patterson Park Public Charter School v. Baltimore Teachers Union,* 399 Md. 174, 197, 923 A.2d 60, 74 (2007). To determine legislative intent, the plain language should not be interpreted in isolation, but "[r]ather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Clipper Windpower,* 399 Md. at 554, 924

A.2d at 1168 (quoting *Kushell v. DNR,* 385 Md. at 577, 870 A.2d at 193).

A statute is ambiguous where two or more reasonable interpretations exist. *Chow v. State,* 393 Md. at 444, 903 A.2d at 395. When a statute is ambiguous, we consider the common meaning and effect of statutory language in light of the objectives and purpose of the statute and Legislative intent. *Stoddard v. State,* 395 Md. 653, 662, 911 A.2d 1245, 1250 (2006).

We give deference to a consistent and long-standing construction given a statute by an agency charged with administering it. *Marriott Employees v. MVA,* 346 Md. 437, 445, 697 A.2d 455, 459 (1997). "Manifestly, agency regulations must be reasonable and consistent with the letter and spirit of the law under which the agency acts." *Falik v. Prince George's Hosp.,* 322 Md. 409, 417, 588 A.2d 324, 328 (1991). In determining whether an agency interpretation shall be given deference, we have said as follows:

> "The weight given an agency's construction of a statute depends on several factors—the duration and consistency of the administrative practice, the degree to which the agency's construction was made known to the public, and the degree to which the Legislature was aware of the administrative construction when it reenacted the relevant statutory language. Other important considerations include 'the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation' and 'the nature of the process through which the agency arrived at its interpretation,' with greater weight placed on those agency interpretations that are the product of adversarial proceedings or formal rules promulgation. An administrative agency's construction of the statute is not entitled to deference, however, when it conflicts with the unambiguous statutory language."

*Marriott,* 346 Md. at 446, 697 A.2d at 459 (internal citations omitted).

## V.

Following these principles, we turn first to whether the phrase "last compensation payment" is ambiguous as used in the Workers' Compensation Act. The phrase does not appear elsewhere in the Maryland Code, and the term "payment" is not defined within the Act. Our search has uncovered no legislative history concerning its intended meaning.[8] There are at least two competing interpretations of the statutory language in this case. One interpretation is that by using the word "payment" rather than "receipt," the Legislature did not intend to require that the claimant actually receive payment for the limitations provision to run, but instead desired to give the Workers' Compensation Commission broad authority to determine the date payment is made under the statute. Another interpretation is that the use of the word payment merely directs the Commission to apply the common understanding of the term. An examination of our case law supports the existence of ambiguity among these conflicting constructions. While this Court has never had a case that turns on the interpretation of the exact day on which the "last compensation payment" was made, we have addressed indirectly the matter in several instances.

We have said in the past that the limitations provision "by its terms is plain and unambiguous, and leaves no room for interpretation." *Adkins v. Weisner*, 238 Md. 411, 414, 209 A.2d 255, 256 (1965). This was an accurate statement based on the facts at issue in *Adkins*, where a claimant filed a petition for modification over five months after the statute of limitations had passed. The petition to modify the award was filed on October 2, 1963, and "[i]t was stipulated by the parties

---

**8.** As noted in Part III, *supra*, a limitations provision has been in existence since 1931, with the "last compensation payment" language developing in 1935 and applying to all awards after 1957. Since then the current § 9–736(b) has been subject to various increases and decreases in the number of years in which the Commission has the ability to modify an award and the addition of alternate benchmarks for the statute of limitations provision, but has undergone no changes with regard to its phrasing of the "last compensation payment."

that as of April 20, 1960, all payments were made that were due." *Id.* at 413, 209 A.2d at 256.[9]  The claimant in *Adkins* asserted that the proper date for the last compensation payment was when his last payment would have been made had he not requested a lump sum award, rather than the date when the last award in fact was made.  Based on the stipulation that the award "was made on or before April 20, 1960," the question of whether a payment was made when it was mailed or when it was received was not before the Court, and our statement about the clear and unambiguous language of the limitations provision did not anticipate this issue.

We held an application to modify an award time-barred in *Vigneri v. Mid City Sales*, 235 Md. 361, 201 A.2d 861 (1964). In *Vigneri*, the claimant filed for modification on December 28, 1958, for a claim where it was "clear that the last payment of compensation to the claimant was made on or before November 5, 1954." *Id.* at 364, 201 A.2d at 862.  This Court focused on the dates when the claimant had received payments, noting that he "*received* payments through March 13, 1954. . . . He was again paid compensation . . . through October 30, 1954.  On November 5, 1954, the employee signed and filed with the commission a 'settlement receipt' indicating the duration and amount of the temporary total benefits he had *received.*" *Id.* at 363, 201 A.2d at 861 (emphasis added).  The date relied upon for the running of the statute of limitations was the date the settlement receipt was filed with the Commission, though we noted that the last payment might have been made "on or before" this date.  Again, the petition to modify the award was barred by several months, and so the conservative date of the settlement receipt did not affect the outcome.

The ambiguity as to the exact date continued in *Chanticleer Skyline Rm. v. Greer*, 271 Md. 693, 319 A.2d 802 (1974).  The issue in that case was whether a payment of attorney fees to a

---

**9.**  The applicable statute at the time, Art. 101, § 40(c), limited modifications to applications made "within three years next following the last payment of compensation."

claimant's attorney constituted a last compensation payment under the statute. We found that it did, noting that "the counsel fee ... was paid by the insurer to the attorney on June 15, 1970," and thus fell within the statute of limitations. *Id.* at 696, 319 A.2d at 803. A finding that the fee "was paid" on a certain date provides no guidance as to whether the payment was mailed, received, or delivered in person to the attorney on the date listed.

The most relevant case, for purposes of understanding the date when the last compensation payment is made, is *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 620 A.2d 340 (1993). In *Vest*, the claimant sought review of the Commission's refusal to reopen an award. We affirmed the lower court ruling that the award was time-barred because it was filed over seven years after the last compensation payment. In reaching this conclusion, however, we noted that "[i]n *Vigneri*, the claimant had last received a payment of compensation on November 5." *Id.* at 474, 620 A.2d at 346. We concluded that *Vigneri* "supports our holding that it is the date of the last payment of compensation ... that determines when the limitations period commences.... We simply looked to the date that the claimant last *received* compensation to determine when the limitations period commenced." *Id.* at 477, 620 A.2d at 347–48 (emphasis added). This Court has never, before or since, so explicitly indicated the proper method for searching for the date of the last compensation payment, and our language concerning the date of receipt should be considered very persuasive.

By contrast, in *Porter v. Bayliner*, 349 Md. 609, 709 A.2d 1205 (1998), we noted when reciting the facts that "[b]y check dated August 22, 1989 ... the appellees paid" the claimant. *Id.* at 612, 709 A.2d at 1206. This Court then referred to the August 29, 1994, filing to reopen the award as occurring "more than five years after the lump sum payment of August 22, 1989." *Id.* Thus from the recitation of the facts, this Court noted the date of issuance of the check as the time from which the limitations provision ran. The issue in *Porter*, however, dealt with whether a Commission award of requiring periodic

payments could be satisfied in a single lump sum payment. Since we held that a lump sum payment unauthorized by the Commission does not serve to implicate the limitations provision of § 7–936(b), the reference to when the last compensation payment was made was not relevant to the outcome of the case, and should be weighed accordingly.

Similarly, in *Mona Electric v. Shelton*, 377 Md. 320, 833 A.2d 527 (2003), we affirmed the decision of the intermediate appellate court that payments made by an employer in the absence of any Commission award did not serve to implicate the limitations provision of § 7–936(b). While ultimately finding the statute inapplicable because a voluntary payment did not constitute a "compensation payment" under the statute, we noted in the facts that "the last check sent . . . was dated October 3, 1994." *Id.* at 323, 833 A.2d at 529. Whether that date was the relevant point at which we believed the limitations provision began to run is indeterminable, because the only further guidance provided is that the insurer argued that since "the last payment of compensation to Shelton was in October, 1994, the request for modification, filed in November, 1999, was outside the limitations period and was therefore barred." *Id.* at 324, 833 A.2d at 529. While mentioning the date of mailing, the language provides no further guidance as to whether that specific date controlled when holding the last payment was in "October, 1994."

The references to the dates when the check was drawn in *Porter* and mailed in *Mona* are useful only as indication of ambiguity in the phrase "last compensation payment." When contrasted with the clear language focusing on when the checks were received in *Vest* and *Vigneri*, complete with the directive on how to find the date of the last compensation payment in *Vest* that has never been overruled, we find that at the very least, no clear rule has emerged from our case law.

We note that similar confusion is reflected in the Court of Special Appeals. In *Seal v. Giant*, 116 Md.App. 87, 94, 695 A.2d 597, 600 (1997), the Court of Special Appeals refers only to the date the last payment "was made," but the record

indicates the date used was the date on the check as submitted by the insurer. This stands in contrast to the Court of Special Appeal's later characterization of that decision in *Mona Electrical v. Shelton*, 148 Md.App. 1, 810 A.2d 1022 (2002), where the intermediate appellate court noted the claimant in *Seal* "*received* her last payment of compensation one month earlier than if she had been paid weekly." *Id.* at 10, 810 A.2d at 1027 (emphasis added). It also stands in contrast to the payment date calculation in the decision in *WMATA v. Hewitt*, 153 Md.App. 42, 834 A.2d 985 (2003), where the Court of Special Appeals stated that where a payment of attorney's fees was due June 25, and payment was mailed on July 10 but received on July 11, the payment was sixteen days late under COMAR 14.09.01.24A(4). *Id.* at 53, 834 A.2d at 992. While not dealing directly with § 9–736(b), the court nonetheless included the day on which the payment was mailed when computing the timing of the payment under a workers' compensation award of attorney fees.

We find no factors to support deference to the administrative agency's interpretation of the statutory provision because of the lack of a clearly articulated or promulgated rule concerning the date of the last compensation payment. This case stands in contrast to *Falik v. Prince George's Hosp.*, 322 Md. 409, 588 A.2d 324. There, we gave deference to the Workers' Compensation Commission where the term "community" was patently ambiguous and undefined in the statute and the Commission promulgated rules effecting a single-rate scheme for payment under § 37(c). In *Falik*, the Commission had adopted and published a Fee Guide which was subject to frequent review and revisions. *Id.* at 414–15, 588 A.2d at 326–27. Legislative acquiescence was clear because:

"[A]s a result of a recommendation of the Governor's Commission to Study the Workers' Compensation System ... § 37(c) was amended by ch. 591 of the Acts of 1987 by adding this provision to its text: 'At least once every 2 years, the Commission shall review the allowable fees and

other charges for completeness and reasonableness and shall make appropriate revisions to established guidelines.' " *Id.* at 417 n. 1, 588 A.2d at 328 n. 1.

Instead, this case is more akin to the facts in *Marriott Employees v. MVA,* 346 Md. 437, 697 A.2d 455. In *Marriott,* we held that the agency interpretation was unpersuasive where the construction was inconsistent within the agency, where the Legislature was not likely aware of the agency interpretation, and where there was no evidence indicating that the interpretation "grew out of a 'process of reasoned elaboration' and ... was certainly not the result of an adversarial process or formal rulemaking." *Id.* at 449, 697 A.2d at 461 (quoting *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307, 1315 (1986)). *See also Bouse v. Hutzler,* 180 Md. 682, 687, 26 A.2d 767, 769 (1942) ("The court below decided in favor of the defendant upon the presumption that his method of calculation was in accordance with the unvarying administrative practice. It appears, however, that the practice in this State has certainly not been uniform in the last generation.") As in *Marriott,* there exists no formal Commission rule, and no evidence that the interpretation argued for here arises out of a "process of reasoned elaboration." Under such circumstances, no deference should be afforded.

Sysco, in arguing for agency deference, places sole reliance on Maryland Rule 1–321(a) and a Commission procedural regulation, COMAR 14.09.01.04(B)(3), which both read in relevant part that "[s]ervice by mail is complete upon mailing." Both provisions, however, deal with the service of papers, such as pleadings and other papers filed with the Court or Commission respectively, upon another party. The procedural regulation of filings is inapposite to compensation payments. In addition, both provisions have accompanying safeguards that would not be present under Sysco's proffered interpretation of § 9–736(b). Maryland Rule 1–321(a) is tempered by the requirement providing an additional three days to act under any prescribed limitation period if service is by mail, pursuant to Md. Rule 1–203(c). Sysco's analogy is undercut by the fact

that Md. Rule 1–203(c) was held inapplicable to the time limit for appeals under § 9–737 of the Workers' Compensation Act in *Chance v. WMATA,* 173 Md.App. 645, 920 A.2d 536 (2007).[10] As to the Commission regulation, it requires an accompanying certificate of service indicating the date and manner of the service in subsection (B)(4). We find these provisions should not inform the outcome in the case at hand.

Sysco also draws support for its construction of § 9–736(b) from the statutory interpretation principle that, in contrast to the overall liberal construction of the Workers' Compensation Act in favor of the claimant, the limitations provision should be strictly construed. While Sysco provides a correct recitation of the law, Sysco's reliance on this principle is misplaced. Strict construction of the statute of limitations does not require this Court to choose the more narrow of two competing interpretations of the limitations provision. Rather, it requires us to discern the legislative intent behind the provision to determine the correct date on which the last compensation payment occurs as a matter of law. Only the correct application of the provision will serve the purpose of strict enforcement, which is to encourage a bright line rule and disallow claims beyond the statutory period provided. We have said that "[a] statute of limitations which is triggered by an externally verifiable date is a classic example of an objective, bright-line rule which fosters predictable outcomes in otherwise unpredictable situations." *DeBusk v. Johns Hopkins,* 342 Md. 432, 439, 677 A.2d 73, 76 (1996). In the case of

---

**10.** In *Chance v. WMATA,* 173 Md.App. 645, 656–57, 920 A.2d 536, 542–43 (2007), the Court of Special Appeals articulated that the purpose behind the mailbox rule, Md. Rule 1–203(c), was to put parties on an equal footing regardless of how they were served, such that a party served via mailing had as much time to respond as one who received service in person. Section 9–737 of the Labor and Employment Article required service by mailing only, thereby eliminating the need for such parity. Though we do not reach the question, it is interesting to note that the reason Md. Rule 1–203(c) did not apply to § 9–737 would not hold true under § 9–736(b), where payments may be made either by mailing or direct delivery. This perhaps lends even further support to our conclusion that the date of mailing should not be the determinant date of the last compensation payment.

mailing versus receipt, the parties cite possible complications with either rule, and accordingly, we should look only to which construction is proper. The limitation itself, as we noted in *Vest*, serves the purpose of limiting liability when the reopening of a claim is too attenuated from the original injury. We said as follows:

"[A]ny attempt to reopen a case based on an injury ten or fifteen years old must necessarily encounter awkward problems of proof, because of the long delay and the difficulty of determining the relationship between some ancient injury and a present aggravated disability. Another argument is that the insurance carriers would never know what kind of future liabilities they might incur, and would have difficulty in computing appropriate reserves."

*Vest*, 329 Md. at 471, 620 A.2d at 344 (quotation omitted).

Petitioner here does not rely on tolling or other equitable remedies seeking to avoid the application of the statute of limitations. Rather, petitioner argues that he falls within the statutory time period by virtue of the date when he received his last compensation payment. The definition of the date when payment occurs cannot be crafted narrowly or liberally; rather, this Court should seek a proper definition of the term. Only the result of such an inquiry will properly serve the purpose of the statute and its limitations provision. For the foregoing reasons, we see no reason to afford deference to the agency interpretation of the last payment of compensation.

## VI.

We turn now to the task of determining the meaning of the phrase "last compensation payment" in the limitations provision. The common understanding of the term payment and a harmonious reading with the Workers' Compensation Act as a whole lead us to conclude that the last compensation payment dates from the time it is received.

We look first at the dictionary definition of the word "payment" for insight as to legislative intent. Dictionary definitions are not dispositive as to the meaning of statutory

terms. *Marriott,* 346 Md. at 447, 697 A.2d at 460. Nonetheless, such definitions provide a useful starting point for discerning what the legislature could have meant in using a particular term. 2A NORMAN SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.28 (7th ed.2007). Black's Law Dictionary defines "payment" as:

"1. Performance of an obligation *by the delivery of* money or some other valuable thing accepted in partial or full discharge of the obligation.

2. The money or other valuable thing so delivered in satisfaction of an obligation."

BLACK'S LAW DICTIONARY 1165 (8th ed.2004) (emphasis added). Since Sysco does not contend that the date of payment is the date of issuance, there is no argument before us that the term as used in § 9–736(b) refers to the physical object as payment, but rather to the act of being paid. When limiting our inquiry as to when the date of payment occurs, the first definition provided above clearly posits delivery as the integral date for payment.

This definition of payment is in accord with the principles of commercial law in the Maryland Uniform Commercial Code, which petitioner relies upon to support the inference that payment is not made at the point of mailing. Md.Code (1975, 2002 Repl.Vol., 2006 Cum.Supp.), § 3–310 of the Commercial Law Article.[11] Petitioner contends that delivery and acceptance are key components of payment and that issuance alone does not constitute payment. *Messing v. Bank of America,* 373 Md. 672, 821 A.2d 22 (2003). The Court of Special Appeals found that delivery constitutes conditional payment in *Ward v. Federal Kemper Ins. Co.,* 62 Md.App. 351, 358, 489 A.2d 91, 95 (1985). In *Ward,* the Court of Special Appeals said that "[w]hen the drawer draws a check on the drawee and delivers the check to the payee, the check ordinarily is regard-

---

**11.** Petitioner cited § 3–602 of the Commercial Law Article of the Maryland Code in support of his argument. We find instead that the pertinent provision is § 3–310 of the Commercial Law Article, quoted *infra.*

ed as ... a conditional payment of the underlying obligation.... The underlying obligation represented by the check is ... suspended" until the check is honored. *Id.* at 358, 489 A.2d at 95. This proposition is in conformance with § 3–310(b) of the Commercial Law Article, which states in relevant part that:

"[I]f a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply: (1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified."

■ Respondent counters that the use of the term "payment" in the Workers' Compensation Act is substantively different than the term in either commercial context or common usage. Respondent refers to the other provisions within the Act that refer to payment. We find, however, that those provisions run contrary to the proposition respondent argues. Section 9–713, dealing with the payment of benefits, calls for an employer to "begin paying" benefits within 21 days of the Commission's order. Section 9–727, on the payment of an award, states the employer "shall begin paying compensation" within 15 days of an award or payment due date, and § 9–728 provides for penalties when an employer fails "to begin paying" within the prescribed time. To "begin paying" cannot be considered the equivalent of "payment," and thus heavily supports the idea that mailing would satisfy proof of beginning to pay, but not of payment itself. Finally, Sysco cites § 9–903 captioned "Effect of receipt of amount in action," for the proposition that the Legislature uses the term "receipt" when it intends the date of receiving a benefit to control. Closer examination of the provision, however, indicates that the entire term "receipt of amount in action" is meant to distinguish the provision from an award ordered by the Commission. Section 9–903(a) provides in relevant part that "if a covered employee ... receive[s] an amount in an action: (1) the amount is in place of any award that otherwise could be made

under this title; and (2) the case is finally closed and settled." The purpose of § 9–903 is to ensure that money received for an injury in the absence of a Commission award will count towards any amount an employer might be ordered to pay if a claim is made in the future for the same injury. The requirement that the money must be received in order for it to satisfy the statutory obligation further buttresses Stachowski's claim that the relevant date of a compensation payment should be the date it is received.

While the common understanding of payment and other references to the term in the Code are sufficient support to determine the outcome of this case, we need not rely solely on Maryland law to explicate our answer. An instructive analogue is found in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901–950 (2000). Section 922 of the Act provides, in relevant part, for the modification of awards "at any time prior to one year after the date of the last payment of compensation." *Id.* § 922. The United States Supreme Court discussed this requirement *Intercounty Constr. Corp. v. Walter,* 422 U.S. 1, 95 S.Ct. 2016, 44 L.Ed.2d 643 (1975). While deciding the provision did not bar a deputy commissioner from issuing an award where the previous payment had been voluntary and did not fall under § 922, Justice Scalia, writing for the Court, noted the claimant requested a hearing "two years after his last receipt of a voluntary payment of compensation from the carrier." *Id.* at 5, 95 S.Ct. at 2019. The Act is more thorough in tracking compensation payments, however, because § 914 calls for the claimant to provide receipts of payment to the employer and for the employer to file notice with the Commission within 16 days after the final payment has been made. 33 U.S.C. § 914(g) and (k) (2000).

Other states have interpreted the date of payment similarly. The Pennsylvania Supreme court provides the most recent example, in *Romaine v. W.C.A.B.,* 587 Pa. 471, 901 A.2d 477 (2006). A claimant sought review of her petition to reinstate benefits after the Workers' Compensation Appeal Board dismissed her claim as untimely. Under the Pennsylvania Act, a

petition to reinstate benefits had to be filed within three years after "the date of the most recent payment of compensation made prior to the filing of such petition." 77 PA. CONS. Stat. § 772 (West 2002). The Pennsylvania Supreme Court affirmed the outcome reached by the Commonwealth Court and appeal board but disagreed with the reasoning. Answering the question of when the date of payment occurs for the running of the statute of limitations, the court determined that "the only date of import is the date upon which the check is received." *Id.* at 486. The court relied on its case law on negotiable instruments, Black's Law Dictionary's definition of payment, the construction of the term in the commercial code, and a survey of results from sister states. *Id.* at 480–86. On this last point, the court concluded that "the predominate view, and the one with which we agree, is that payment is received when the check is received, a view held by at least twenty-four states." *Id.* at 483.

In North Carolina, the Commission may review awards provided that "no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article." N.C. GEN.STAT. § 97–47 (2005). The North Carolina Court of Appeals, in an opinion ultimately holding a claimant's application for modification untimely, nevertheless interpreted the date of the last payment of compensation by stating, "[i]t is well established by case law that this section provides a limitations period requiring any claim for additional compensation on the grounds of a change in condition to be made within two years of the date the last payment of compensation was received by the claimant." *Hunter v. Perquimans County Bd. of Educ.*, 139 N.C.App. 352, 533 S.E.2d 562, 565 (2000).

In Louisiana, the Court of Appeal remanded a case to determine when the last check was received by a claimant. *Seliga v. Am. Mut. Liab. Ins. Co.*, 174 So.2d 878 (La.Ct.App. 1965). Claims were limited by Louisiana statute, but the limitation did not apply "until the expiration of one year from the time of making the last payment." LA.REV.STAT. ANN.

§ 23:1209 (2005). The Louisiana court applied principles from commercial law:

> "The last payment in the instant case was made by check. And in the absence of a specific agreement to the contrary, a check or draft is a conditional payment; when the instrument is honored on presentation, it constitutes payment as of the date it was received."

*Id.* at 879. *See also Stroupe v. Workmen's Comp. Comm'r*, 151 W.Va. 415, 152 S.E.2d 544, 547 (1967) ("This Court has heretofore regarded the date on which the claimant receives the commissioner's check as the date of the making of 'the last payment in any permanent disability case' within the meaning of Code, 1931, 23–4–16, as amended."); *Cornell v. Stimson Lumber Co.*, 257 Or. 215, 477 P.2d 898 (1970) (stating that the "last payment of compensation" occurred when the check was received by the claimant, not when it was honored); *Tiller v. 166 Auto Auction*, 65 S.W.3d 1, 4 (Mo.Ct.App.2001) ("Except for cases in which the check is dishonored, we think that for the purpose of determining when a final award of the Commission has been paid by a liable party, the relevant date is the date the checks were offered to and accepted by the claimant."), overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo.2003).

An examination of the minority of states that have determined payments based on mailing date shows that the reason for doing so is often to avoid assessing penalties to the insurer for late payments. *See, e.g., Kiesecker v. Webster City Custom Meats, Inc.*, 528 N.W.2d 109 (Iowa 1995) (holding payment occurs at mailing to avoid assessing a penalty for late payments and interest for late payments under IOWA CODE §§ 85:30, 86:13 (West 1996)); *Am. Int'l Group v. Carriere*, 2 P.3d 1222 (Alaska 2000) (deferring to a promulgated board interpretation in existence since 1981 because basing the date of mailing is a reasonable interpretation where the board would otherwise have to impose late penalties under ALASKA STAT. § 23.30.155(e), (f) (2006)); *Eaton v. Sealol, Inc.*, 447 A.2d 1147 (R.I.1982) (implicitly counting the date of mailing as the date the payment is made, avoiding the assessment of penal-

ties against the insurer under R.I. GEN. LAWS § 28–35–43 (2003)); *Audobon Tree Service v. Childress,* 2 Va.App. 35, 341 S.E.2d 211 (1986) (construing the predecessor statute to the current VA.CODE ANN. § 65.2–524 (2007 Repl.Vol.) to mean that the date of mailing was the date compensation was paid, because it avoids insurer liability), superceded by statutory amendment as noted in *Ratliff v. Carter Machinery Co.,* 39 Va.App. 586, 575 S.E.2d 571 (2003). We note that the Maryland Code contains no conflict, because the assessment of penalties depends not on payment, but the beginning of payment. There is no policy reason, based on the avoidance of penalties where a mailing is delayed, to support interpreting payment as the date of mailing under Maryland workers' compensation law.

For the foregoing reasons, we hold that the date of the last compensation payment for the purposes of the limitations provision in § 9–736(b) of the Workers' Compensation Act is the date when payment is received by a claimant or his or her lawful representative.

***JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.***