964 A.2d 210

**Monica ALLEN, Individually, etc., et al.**

v.

**Jay DACKMAN.**

No. 2356, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Jan. 6, 2009.

Reconsideration Denied Feb. 24, 2009.

---

Saul Kerpelman (Brian S. Brown, Saul E. Kerpelman & Associates PA, on the brief), Baltimore, for appellant.

James R. Benjamin, Jr., (Thomas J. Whiteford, Taylor & Preston, LLP, on the brief), Baltimore, for appellee.

Panel: ZARNOCH, WRIGHT, JAMES A. KENNEY, III, (Retired, specially assigned) JJ.

WRIGHT, J.

On June 11, 2002, appellants, Monica Allen and Shantese Thomas, minors, by their mother and next friend, Monica D. Allen (collectively, "appellants"), filed a complaint against Jay Dackman ("appellee") and Hard Assets, LLC ("Hard Assets") in the Circuit Court for Baltimore City.[1] In their complaint, appellants alleged that the minor children sustained injuries as a result of their exposure to lead-based paint while residing at 3143 Elmora Avenue ("property"). Appellants further alleged that appellee and Hard Assets violated Maryland's Consumer Protection Act ("CPA"), codified at Md.Code (1975, 2005 Repl.Vol.), § 13–101 *et seq.* of the Commercial Law Article ("CL"), and were negligent in failing to properly maintain and safeguard the property against the presence of chipping, flaking, and/or peeling lead-based paint.

---

1. Monica D. Allen brought her own individual claims as well.

On June 20, 2005, after the close of discovery, appellee filed a motion for summary judgment. A hearing was held on July 25, 2005, and on September 1, 2005, the trial court granted appellee's motion for summary judgment. On November 21, 2007, a line of dismissal was filed as to Hard Assets.[2] As a result, there was a final judgment with regard to all parties. This timely appeal followed.

We are asked to determine whether the trial court erred in granting appellee's motion for summary judgment. For the reasons stated below, we hold that the trial court was correct, and affirm its judgment.

## FACTS

Monica Allen was born on September 8, 1996, and Shantese Thomas was born on January 23, 1998. Sometime in 1999, appellants moved into the property in question, where the children's grandmother, Tracy Allen ("Ms. Allen"), had been residing since the summer of 1998. According to Ms. Allen, before she moved into the property, she entered into a lease with Mildred Thompkins, the owner of record at that time. Ms. Thompkins was still the owner of record when appellants moved into the property in 1999.

Ms. Thompkins later failed to pay taxes on the property and on March 16, 2000, Hard Assets acquired the property from Ms. Thompkins in lieu of the foreclosure. Appellee was one of two members of Hard Assets. Over the course of appellee's 15 years in purchasing tax liens, it was his practice to sell the properties he acquired "as is," rather than keeping them as rental properties. Therefore, when Hard Assets obtained title, it did not intend to lease the property, nor were its members aware that appellants or Ms. Allen were living at the property.

Once Hard Assets became aware that appellants and Ms. Allen were residing at the property, Hard Assets advised them that they were not supposed to be there. Hard Assets

---

2. Hard Assets, therefore, is not a party to this appeal.

informed appellants and Ms. Allen that they had 30 days to vacate the premises. After 30 days, appellants and Ms. Allen had not vacated the property. On June 27, 2000, Hard Assets filed a forcible entry and wrongful detainer complaint against Ms. Allen in the District Court for Baltimore City to have her and appellants removed from the property. Appellee signed the complaint on behalf of Hard Assets.

On August 18, 2000, judgment was entered in favor of Hard Assets when the district court found that Ms. Allen was wrongfully in possession of the property. Thereafter, Ms. Allen and appellants continued to stay in the property, and on September 28, 2000, a petition for warrant of restitution was filed. That petition was subsequently granted, and Ms. Allen and appellants were forcibly removed from the property on or about October 23, 2000.[3]

Hard Assets sold the property on March 16, 2001. During the one-year period that it held title to the property, Hard Assets did not receive rent nor did it file collections for rent. Likewise, Ms. Allen did not pay rent to Hard Assets. Ms. Allen did not speak to Hard Assets or its representatives, and was not aware of who Hard Assets was. Similarly, Monica D. Allen did not know Hard Assets or appellee.

From March 16, 2000 to March 16, 2001, appellee was responsible for running the day-to-day business affairs of Hard Assets. The majority of the business involved the "as is" sale of properties that were purchased and acquired through tax liens. Appellee never set foot inside the property.

While residing at the property, each of the minor children suffered elevated blood-lead levels. Some of their elevated levels occurred before Hard Assets acquired the property, and some occurred after Hard Assets sold the property. Both minor children suffered from their highest blood-lead levels while Hard Assets held legal title to the property. As a

---

3. According to Ms. Allen's deposition testimony, she moved out of the property during the summer of 2000.

result, appellants filed a complaint against Hard Assets and appellee on June 11, 2002.

On June 20, 2005, appellee filed a motion for summary judgment, asserting that he could not be held individually liable because: (1) he did not lease the property to appellants; (2) he was a member of Hard Assets, a limited liability company; (3) he had no knowledge of the alleged tort; and (4) he could not be held liable under the CPA. The circuit court granted appellee's motion and appellants now appeal.

## DISCUSSION

"In reviewing the grant of a motion for summary judgment, appellate courts focus on whether the trial court's grant of the motion was legally correct." *Laing v. Volkswagen of Am., Inc.*, 180 Md.App. 136, 152–53, 949 A.2d 26 (2008) (citations omitted). Under Maryland Rule 2–501(f), granting of summary judgment is proper if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Therefore, when we review a grant of summary judgment, " 'we must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such dispute is absent will we proceed to review determinations of law.' " *Stachowski v. Sysco Food Servs. of Balt., Inc.*, 402 Md. 506, 515–16, 937 A.2d 195 (2007) (quoting *Remsburg v. Montgomery*, 376 Md. 568, 579, 831 A.2d 18 (2003)). In so doing, we " 'review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party.' " *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 294, 936 A.2d 343 (2007) (quoting *Myers v. Kayhoe*, 391 Md. 188, 203, 892 A.2d 520 (2006)).

In this case, appellants argue that the trial court erred in granting appellee's motion for summary judgment. Specifically, appellants assert that appellee could have been found individually liable—even though he did not individually hold title to the property—because he was an "owner" or "opera-

tor" of the property, as defined by the Housing Code of Baltimore City ("Housing Code").[4] To support their argument, appellants cite Section 310(a) of the Housing Code, which states, in pertinent part:

Any person who is either an owner or operator of a property subject to this Code shall be responsible for compliance with all of the provisions of the Code. . . . Where, such as in Chapter 10, this Code states a responsibility to be that of the owner, it shall also be that of any person who is an operator of the property in his behalf.

Further, appellants rely on Section 105 of the Housing Code, which defines "operator" and "owner" as follows:

*Operator* shall mean any person who has charge, care or control of a building, or part thereof, in which dwelling units or rooming units are let or offered for occupancy, and shall include a lessee, sub-lessee, any vendee in possession, or any other person otherwise managing or operating such building, or part thereof.

\* \* \*

*Owner* shall mean any person, firm, corporation, guardian, conservator, receiver, trustee, executor, or other judicial officer, who, alone or jointly or severally with others, owns, holds, or controls the whole, or any part, of the freehold or leasehold title to any dwelling or dwelling unit, with or without accompanying possession thereof . . .

According to appellants, a trier of fact could have concluded that appellee had "charge, care or control" of the property or "control" of the freehold, thereby making him an "operator," if not an "owner," who was bound by the duties imposed by the Housing Code. Thus, appellants assert that "the trial court mistakenly believed that in order for [a]ppellee to be liable, [a]ppellants were required to pierce the 'corporate veil.'"

A review of the record shows that there is no genuine dispute of material facts. As such, we proceed to review the

---

4. The Housing Code, as cited in this case, is codified in Article 13 of the Baltimore City Code. This article has since been re-numbered.

trial court's conclusions of law. In other words, we are to determine whether the trial court was legally correct in concluding that appellee was neither an owner nor operator and therefore could not be held individually liable for negligence.

In the memorandum issued by the trial court, it found that appellee could not be held individually liable for negligence "because Hard Assets, LLC, not [appellee] individually, held title to the subject property." In addition, the trial court found that appellee could not be held liable under the CPA because "he was not a landlord and never made any representation, actual or implied, as to the property to [appellants]." Lastly, the trial court held that appellee could not "be liable as an owner or operator pursuant to [Housing Code] § 310(a)." We agree with the trial court's conclusions.

As appellee points out in his brief, the undisputed evidence shows that Hard Assets was the owner of the property. Hard Assets acquired title to the property on March 16, 2000, and subsequently sold and conveyed the property a year later. There is no evidence in the record to suggest that appellee, as an individual, had title to the property or that he exercised control over any part of the freehold *title*. Appellants assert that appellee had control of the freehold (property) because appellee was responsible for running the day-to-day business affairs of Hard Assets. Appellants fail to recognize, however, that an "owner" under the Housing Code must be a person who has control over the title itself. Because appellee, as an individual, lacked the legal right to sell and convey title to the property, it follows that appellee was not an "owner" for purposes of the Housing Code.

Similarly, the undisputed evidence shows that appellee was not an "operator" of the property, as defined by the Housing Code. As we previously stated, an "operator" is defined as "any person who has charge, care or control of a building, or part thereof, in which dwelling units or rooming units are *let or offered for occupancy*." "In Baltimore City, therefore, the obligation to comply with the law begins with the first dwelling let for money." *Brown v. Dermer*, 357 Md. 344, 372, 744

A.2d 47 (2000). In this case, the facts show that Hard Assets never intended to lease the property, nor were its members aware that appellants or Ms. Allen were living there when they purchased it. Further, during the one-year period that it held title to the property, Hard Assets did not offer the building or any part thereof for rent, did not enter into a lease with appellants, did not receive rent from them, did not file collections for rent, and none of its representatives ever spoke to appellants or Ms. Allen. As such, appellee cannot be held individually liable because he was not an "operator" of the property.

Next, appellants cite *Shipley v. Perlberg*, 140 Md.App. 257, 277–78, 780 A.2d 396 (2001), and assert that appellee may be held individually liable in tort because he had "charge, care or control" of the property. Appellants' reliance on *Shipley* appears to be misplaced, however, because in that case we held that the defendant had no "charge, care, or control" over the property, as he was not involved in renting properties and had never visited the subject property. Such is the case here.

■■■ Likewise, appellee cannot be held liable for any negligent acts of Hard Assets under the provisions of Maryland's Limited Liability Company Act, codified at Md.Code (1975, 2007 Repl.Vol.), § 4A–101 *et seq.* of the Corporations & Associations Article ("C&A"). According to C&A § 4A–301, "no member shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company." Thus, appellants cannot succeed in imputing the alleged negligent acts of Hard Assets to appellee.

■■■ Lastly, appellants' claims brought pursuant to the CPA are not viable. Under the CPA, "consumer" includes an actual or prospective lessee or recipient of consumer realty. CL § 13–101(c). The CPA "allows a tenant to recover damages, in a private cause of action against a landlord, for injuries caused by 'unfair or deceptive trade practice.'" *Jackson v. Dackman Co.*, 181 Md.App. 546, 583, 956 A.2d 861 (2008) (citing CL §§ 13–303 & 13–408). It "applies to a lease

at the time the consumer enters into it, and . . . is intended to govern deceptive trade practices which induce the prospective tenant to enter into such a lease." *Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 683, 645 A.2d 1147 (1994). Further, the CPA applies "to material misstatements and omissions at the inception of the lease rather than during the full term of the lease." *Id.* at 686, 645 A.2d 1147; *see also Berg v. Byrd,* 124 Md.App. 208, 214, 720 A.2d 1283 (1998) ("[T]he relevant time period to consider when determining whether there has been a violation of the CPA is the time the parties enter into the lease.").

In this case, Ms. Allen was the person who first executed a lease for the property. At that time, Hard Assets did not own the property and appellants were not yet residing there. Moreover, there is no evidence to show that appellants were added as residents under the lease. When Hard Assets acquired the property, it did not intend to lease the property, nor did it collect rent from Ms. Allen or appellants. Instead, upon learning that Ms. Allen and appellants were living there, Hard Assets asked them to leave within 30 days. Neither Hard Assets nor appellee entered into a lease with Ms. Allen or appellants. Accordingly, the trial court correctly determined that appellants' CPA claims would be barred. For all of the foregoing reasons, we hold that the circuit court was correct in granting summary judgment in this case and, thus, affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**